## SUPREME COURT.

JOHN WEMPLE, as sheriff, agt. JOHN GLAVIN and ROGER HORAN.

*Jail limits — prisoner on the limits is in the custody of the sheriff — Action by sheriff against sureties on bond for jail limits, for escape — Defenses set up by sureties.*

A prisoner who has given a bond for the liberties of the jail is still in the keeping of the sheriff. The giving of a bail bond does not take the prisoner from the custody of the sheriff and place him in the keeping of his bail. The giving of the bond in effect simply enlarges the walls of the prison. A person is in prison, in legal contemplation, when within the liberties of the prison. An escape from the liberties is an escape from the prison.

A sheriff is not responsible for an act which an individual, who happens to be his deputy, may do, unless in the act done the under officer represented the sheriff, the ordinary evidence of which, would be either the possession of process intrusted to him for prosecution, or a special authority to do the particular act.

The right, however, of the deputy to represent his superior officer, and the consequent responsibility of the latter for the act of the former, may also exist and be evidenced, when the deputy has neither a process nor special authority, by an appointment which makes him the representative of the sheriff in a certain line of business to which the act complained of legitimately belongs; but to insure the liability of the sheriff, one at least of three grounds must be proved — possession of process, special authority or general power covering the particular thing done.

When a party arrested upon an execution issued upon a judgment recovered in a civil action, gives a bond to the sheriff holding the process, for the liberties of the jail and leaves such limits by the permission of the deputy and *jailor appointed by the sheriff*, such permission of the deputy and jailor is an answer and defense to an action brought by the sheriff against the sureties upon such bond for an escape.

*Albany Circuit, January,* 1879.

MOTION for judgment upon a special verdict.

*H. Smith* and *N. C. Moak,* for plaintiff.

*E. Countryman* and *J. H. Wood,* for defendants.

WESTBROOK, *J.*— December 20, 1877, George Eisinger recovered a judgment in this court against John Savage, in an action for assault and battery, for the sum of $2,130.88.

February 21, 1878, an execution against the person of the defendant Savage was issued on such judgment and delivered to the plaintiff, as sheriff of Albany county. On March 1st, of the same year, the plaintiff, by his under sheriff, Joslyn Nodyne, arrested Savage, who thereupon caused a bond for the jail limits to be executed by Glavin and Horan, the defendants in this action, to the plaintiff, as sheriff of the city and county of Albany, whereupon Savage was admitted to the liberties of the jail.

April 2, 1878, Eisinger brought an action against the plaintiff (Wemple) for the escape of Savage from the jail limits. The defendants (Glavin and Horan) had notice of the action, but the same was not defended, and on the thirtieth day of the same month Eisinger recovered in such action a judgment against Wemple for $2,168.69.

The present action is brought by the plaintiff against the defendants, as sureties upon the bond given by Savage for the liberties of the jail, for the escape of Savage therefrom.

On the trial of the action the defendants set up two defenses: 1st. That when the bond was executed by the defendants they were informed by both the under sheriff and the deputy sheriff taking it, that the legal effect of the instrument was, that the defendant Savage should remain a faithful prisoner within the limits of said jail for thirty days only, on the faith of which its obligations were assumed; and, 2d, that at the expiration of such thirty days, Savage left the jail limits by the express consent and permission of Peter A. Crounse, who was a deputy sheriff, and also the keeper of the jail appointed by the plaintiff, upon Savage making and leaving with such deputy and jailor, as required by him, an affidavit to the effect that he, Savage, was a married man, having a family for which he provided, and that he had been a prisoner for the space of more than thirty days.

The court propounded two questions for the jury to answer. The first involved the defense, which related to the transactions at the time the bond was given, and the second to the alleged consent given by Crounse the deputy and jailor, to the escape of Savage. The first question was answered in favor of the plaintiff, and against the defendants, and the second against the plaintiff, and in favor of the defendants.

Upon the rendition by the jury of their verdict, which was simply in the form of written answers to the two interrogatories before stated, which were propounded in writing, it was agreed that the questions of law which such answers involved should be argued at a subsequent day, and after hearing such argument, the court should direct the entry of a general verdict, as if found by the jury, in accordance with its judgment upon the merits thereof, the party against whom such decision was, to have the benefit of an exception to the merits of the legal question upon which such decision depends.

The argument of counsel has been heard, and the point involved is this : When a party, arrested upon an execution issued upon a judgment recovered in a civil action, gives a bond to the sheriff holding the process for the liberties of the jail, and leaves such limits by the permission of the deputy and jailor of the sheriff, is such permission of the deputy and jailor an answer and defense to an action brought by the sheriff against the sureties upon such bond for an escape ?

In the discussion of the question just stated, the following facts must also be borne in mind : Crounse, the deputy and jailor, who gave Savage permission to escape, never held the process under which the arrest was made; neither had he been specially requested either by the sheriff or any other person to do a single thing under it; nor was he present when the bond was taken, and Savage had never been, by any specific order, placed in his actual custody or care. If Crounse had any thing to do with Savage, either upon the original arrest, the taking of bail, or his care while upon the limits, such

power was conferred upon him, not by the possession of any process, not by any special order, not by any special act actually done, but only and solely because he was the deputy and jailor of the plaintiff.

The point which the case presents is certainly an important one, and to my mind somewhat difficult of solution. I concede the rule to be, as claimed by the counsel for the plaintiff, that a sheriff is not responsible for an act which an individual, who happens to be his deputy, may do, unless in the act done the under officer represented the sheriff, the ordinary evidence of which would be either the possession of process intrusted to him for "prosecution, or a special authority to do the particular act. The right, however, of the deputy to represent his superior officer, and the consequent responsibility of the latter for the act of the former, may also exist and be evidenced, when the deputy has neither a process nor special authority, by an appointment which makes him the representative of the sheriff in a certain line of business to which the act complained of legitimately belongs; but to insure the liability of the sheriff, one at least of these three grounds must be proved — possession of process, special authority, or general power covering the particular thing done.

Tested by this rule, if Crounse was only the deputy of the plaintiff, the departure of Savage from the jail limits of the county of Albany by his consent would, probably, have afforded no protection to the defendants. Crounse had not arrested Savage, nor did he hold the process against him. Neither had the sheriff given him any special direction to take charge of Savage, nor as simple deputy sheriff did he have any control of prisoners committed. If, then, the liability of the plaintiff for the acts of Crounse depended only upon the fact that the latter was his deputy, this cause differs from that of *Hopkins* agt. *Leeds* (78 *Penn.*, 396). In that case, the deputies who allowed the defendant in the execution to escape, as would seem from the report, not only held the

Wemple agt. Glavin.

process, but also acted under special instruction from the sheriff. Crounse, however, was not only the deputy of the plaintiff, but was also the keeper of the jail of the county of Albany, by the written appointment of the sheriff, and acting as such ; and this cause, therefor, presents not only the responsibility of the plaintiff for the acts of Crounse, founded upon the fact that he was a deputy sheriff, but also that based upon his appointment by the plaintiff to the position of keeper of the county jail. To this point the discussion must next be directed.

The statute (*vol. I of R. S.*, *page* 907, *section* 235 [*6th edition*]), after making a special provision in regard to the city and county of New York, declares : " And the sheriff of every other city and county of this state shall have the custody of the jails and of the prisoners thereof, and the prisoners in the same. And the sheriffs respectively may appoint keepers of such jails and prisons, for whose acts they shall severally be responsible."

By repeated adjudications in this state (*Dale* agt. *Moulton* 2 *Johnson's Cases* 205–8 ; *Peters* agt. *Henry*, 6 *Johnson*, 121 ; *Janson* agt. *Hilton*, 10 *Johnson*, 550, 561 ; *Barry* agt. *Mandel*, 10 *Johnson*, 563, 583) the jail limits are to be deemed a part of the jail itself, as much so as if the actual prison walls were extended to the boundaries of such limits. From these decisions it necessarily follows, and so, in fact, they expressly hold, that a defendant arrested upon execution issued upon a civil judgment, though entitled, on giving a sufficient bond, to the liberties of the jail (*6th edition, R. S., vol.* 3, *page* 719, *section* 61) is, nevertheless, still a prisoner and within its jail, though admitted " to the liberties " thereof. The condition of the bond also required to be given, and given in this case, strengthens the argument, which is, " that he shall remain *a true and faithful prisoner*, and shall not at any time, or in any manner, escape or go without the limits and boundaries of the liberties established for the jail of such county, until discharged by due course of law." As Savage, then, was a

prisoner, and within the jail (for the limits are a part of the jail), who had the care and custody of him? The process which held him was in the office of the sheriff, and though Crounse did not have it in his own hands, and though he was acting under no special order, yet being the keeper of the jail of the county, and of every part of it, he also necessarily was the keeper of Savage, who was a prisoner thereof.

During the trial, and upon the argument of this cause, after verdict, I confess that I did not see how the permission given by Crounse to Savage to leave the jail limits, could avail the defendants as a defense. The reasoning which led to that impression, however, was founded upon the rights and duties devolving upon the former as a deputy sheriff only, and those flowing from his position as jailor, also, were overlooked. After my attention was directed to the fact that Crounse was the plaintiff's keeper of the county jail, and, therefore, must have been the keeper of the defendant in the execution, as one of its inmates, the force of the argument, founded thereon, could not be resisted. It is undoubtedly unfortunate for the sheriff to lose so large an amount as this action involves, but would it not be equally unfortunate for these defendants, if they, in his stead, are to be the sufferers? Where should they have gone for information, at the end of what they supposed to be the term of Savage's imprisonment, but to him in whose custody, as keeper of the jail, the defendant, in the execution, was? If a mistake was made in the advice given, who should bear its consequences, the party who placed Crounse in a position where his advice was likely to be followed, or those who acted upon it? In using this argument, I am aware that the testimony was very conflicting, and that there may be some doubt if the weight of the evidence justifies the finding of the jury. That question, however, is not now before me. The jury have found, in answer to a plain question propounded, that the sheriff's jailor, who in law had the custody of Savage, made the mistake of supposing that the provisions of the statute, in regard to the discharge of persons imprisoned

Wemple agt. Glavin.

under civil process issued by justices of the peace, were applicable to his (Savage's) case, and on compliance therewith consented to the discharge of the imprisoned debtor. For this act, the plaintiff must be held accountable, not only because reason and justice unite in declaring that a public officer should have no redress against parties for an act done by the advice and consent of a sub-officer, placed by him over them, but also because the statute under which Crounse held his appointment as keeper of the county jail, whilst it provides that the sheriffs of the various counties of the state, except the city and county of New York, "shall have the custody of the jails and of the prisoners *thereof* and the prisoners *in* the same," and that they "respectively may appoint keepers of such jails and prisons," also distinctly declares the responsibility of the sheriff for the acts of his keeper, in these plain words: "For whose [the keeper's] acts they [the sheriffs] shall severally be responsible."

In answer to this argument, that after the giving of a bond for the liberties of the jail, the defendant was still a prisoner *of* or *in* the jail, and as such necessarily in the custody of the sheriff or his jailor, it is said that the force of the bail bond is overlooked. It is claimed that when a prisoner gives bail he is taken from the custody of the sheriff and given to his bail, who thenceforth become his jailors, in place of the sheriff, the latter no longer having the keeping of the prisoner, unless he shall again be surrendered to the sheriff, in the manner prescribed by statute. In support of this proposition several authorities are cited, and among others *Nichols* agt. *Ingersoll* (7 *Johns.*, 155); *Crocker on Sheriffs* (sec. 137); 1 *Wait's Pr.* (671); *Appleby* agt. *Robinson* (44 *Barb.*, 316); *Holmes* agt. *Lansing* (3 *Johnson's Cases*, 73); *Allen on Sheriffs* (132, 213).

If the cases referred to are examined, and their soundness is not questioned, they will be found to be of a class in which the sheriff's responsibilities cease with the perfection of bail. It is not, however, a sound legal proposition that a prisoner, who is given the liberties of a jail upon the execution of the

statute bond, is so fully and completely committed to the keeping of his sureties as to relieve the sheriff from his custody and the jail from one of its occupants. In a more limited sense, the bail do have him in keeping, and that position they must occupy to enable them to fulfill their contract with the sheriff, to which allusion has already been made ; but it is likewise true that the party who has given bail is still, also, in the eye of the law, within the prison, and, *ex necessitate*, by the words of the statute already cited (1 *R. S.* [*6th ed.*], *p.* 907, *sec.* 235), the sheriff has him in actual custody. All legislation in regard to prisoners who have given bonds for the jail limits, and the liability of the sheriff for their escape, proceeds upon the theory that the sheriff has them still in charge and in actual confinement (3 *R. S.* [*6th ed.*], *pp.* 713, 714, *secs.* 18, 19, 20). The bond to be given, as previously stated, is conditioned that the party "shall *remain* a true and faithful *prisoner*" (3 *R. S.* [*6th ed.*], *p.* 719, *sec.* 62) in that, which is a part of the prison itself, and, therefore, *of* the sheriff, both by reason of the fact that the statute makes that officer the keeper "of the prisoners *thereof* and the prisoners *in* the same" (1 *R. S.* [*6th ed.*], *p.* 907, *sec.* 235), and the further fact that he is also made liable for an escape — a liability most unjust, unless the escape is from his immediate custody.

All the cases, too, which hold the prison limits to be simply an extension of the prison walls, some of which are hereinbefore cited, recognize and establish the position taken in this opinion, that the prisoner who has given a bond for the liberties of the jail is still in the keeping of the sheriff. Thus in *Seymour* agt. *Harvey* (8 *Conn.*, 63, *on page* 70), DAGGETT, J., in construing an instrument alleged to have been given for the liberties of the jail, and objected to because the condition was "if he shall well and truly keep himself *within* the said prison," etc., said : "The true construction, however, is, that the prisoner was to enjoy, as the case finds he did, *the liberties of the prison.* It is the settled doctrine on this subject, that the liberties of the prison is an extension or enlarge-

ment of the walls of the prison. A person, therefore, is in prison, in legal contemplation, when within the liberties of the prison. An escape from the liberties is an escape from the prison. In this view the objection vanishes." In *Dole* agt. *Moulton and others* (2 *Johnson's Cases*, 205), on page 207, 208, the court, per LANSING, Ch. J., says: "In all cases, therefore, where the security is offered, the walls of the prison, according to the ancient law, are enlarged to the extent of the limits assigned by the statute; and the law concerning escapes must, without doubt, apply to the limits, in the same manner as it formerly applied to the four walls of the prison (2 *Term Rep.*, 131). So that the limits are to be considered, in such case, as the prison." *Jansen* agt. *Hilton* (10 *Johnson*, 549) and *Barry* agt. *Mandel* (10 *Johnson*, 563) maintain the same doctrine, but they also go further, and decide, that when the prisoner leaves the liberties of the jail without the consent of the sheriff, the latter may pursue and retake him, a power which could not exist, if the effect of the bail bond was to take the prisoner completely from the custody of the sheriff and place him in the keeping of his bail, until such bail again surrendered him to the sheriff, in the manner prescribed by statute.

The conclusion, then, to be drawn from the statutes and the cases is clear. The defendant, in the execution, remained within the jail of the county of Albany. The plaintiff, as sheriff, was primarily his keeper, and by force of appointment by the sheriff, Crounse, as keeper of the jail, was immediately in charge. Either (the sheriff or jailor) had power to unlock the legal doors leading without and beyond the prison limits. It is true he was committed to his bail to be detained by them within the jail liberties as a prisoner of the jail and of its statute keepers, and to do so they had obligated themselves to the sheriff, but they did not agree to keep him there against the acts and will of the sheriff, or those of his under officer in charge, and when either of them removed the legal barrier to the escape and opened the doors for the departure of the

prisoner, as they had full power to do, the liability of the bail ended.

If the exact case before us had never been decided, the principles, upon which the direction to enter a general verdict must depend, are so well settled, that I should still, for the reasons stated, feel constrained to order one in favor of the defendants. It is true (to briefly recapitulate the argument) that when parties have made a contract with a sheriff for his protection, as these defendants have done, they cannot be released or discharged therefrom by the mere word or direction of an under officer, who does not hold the process, and has been charged by the sheriff with no duty under it. In such a case, the under officer cannot represent the sheriff, because neither process nor order has been given, and no general powers, flowing from the appointment he holds, give him any right to act in that particular case.

In this, however, we have a party who is a prisoner "*in*" the county jail (if effect be given to express adjudications holding that the jail limits are a part of the jail), and if not actually "*in*" the jail, then he was certainly (to use other words of the same section of the statute) one "of the prisoners *thereof;*" and of such jail, and, by necessary implication, of its prisoners, Crounse was, by the appointment of the sheriff, the keeper. Towards the imprisoned debtor, the jailor (Crounse) sustained an official relation as his legal custodian for the sheriff, whose personal representative he was. It was Crounse's duty to inform the debtor and his sureties what the contract, which the latter made with the sheriff, required, when it declared that such debtor should "remain a true and faithful prisoner;" or if it was not his duty to inform them, it, certainly, cannot be argued or claimed that when such representative of the plaintiff, acting doubtless under a mistake, informed the imprisoned debtor that the contract of the defendants had been fulfilled, and that he was no longer a prisoner, and all act upon the faith of the announcement, that the parties misled by the special repre-

sentative of the plaintiff should suffer for such act rather than the man who had clothed the mistaken official with the authority which gave to his direction all its potency and effect upon the minds of those to whom it was addressed. This case, however, is not new in any particular, and is precisely identical with that of *Huntington* agt. *Williams and others* (3 *Connecticut*, 427), to which reference is now made.

The reporter's syllabus of that cause reads thus: " When a person, committed to prison on execution for debt, having been admitted to the liberties of the prison, on giving bond to remain a faithful prisoner, departed from the liberties, with the consent and approbation of the gaoler, it was held that the sheriff could not recover on the bond ; a prisoner on the limits being in the custody of the gaoler, and the acts of the gaoler in relation to· such prisoner being imputed to the sheriff."

A careful perusal of that case has failed to discover any point of dissimilarity between it and the one under consideration. Like this, it was an action by the sheriff against the sureties upon a bail bond given by a prisoner for the liberties of the jail; and the defense was that the escape was by the permission of the jailor appointed by the sheriff. The statute of Connecticut giving a sheriff the power to appoint a jailor (*see page* 430 *of* 3 *Conn.*) was no broader than ours, and did not, as ours does, by express words declare the liability of the sheriff for the acts of the keeper. It nowhere is stated in the report that the key of the actual prison door was ever turned upon defendant in the execution by the jailor, any more than it was upon Savage in this, and if it had ever been so turned, after the release of the prisoner from the walls of the prison to the liberties of the jail on bail, the fact of actual confinement once would not·add to the power and duties of the jailor over him. Neither is it stated that the keeper had the process or had received any special authority from the sheriff in the premises. On the contrary, from the argument of the sheriff's counsel, it would seem that the keeper in that case occupied the same position towards the imprisoned debtor,

that Crounse did towards Savage in this, for they expressly say : " Stroud had no authority, except what resulted by implication of law, from his office of gaoler. There was no express delegation of power. The appointment was the only fact from which any power could be inferred." This state-ment could not have been true, if the process was in the hands of Stroud, or if the defendant therein had been specially committed to his care. It is true that in the opinion of the judge (*page* 430) the form of the verdict is given, in which it is stated, " Richard Stroud was keeper of the gaol by the plaintiff's appointment, and as such, 'had the charge and custody of said Randall' at the time of his escape," but it is also true that the whole court, per HOSMER, Ch. J., said, "Waiving, however, the exclusive effect of this finding, and admitting that Stroud was appointed, *in totidem verbis*, keeper of the gaol, the consequence is irresistible that the gaoler was invested with all the authority of his principal." It is evi-dent from this language, and the whole report of the case, that the jury when they found that Stroud " had the charge and custody of said Randall at the time of his escape," found it not as an independent fact, but as the legal conclusion result-ing from another fact, to wit, that Stroud was the keeper of the gaol by the appointment of the sheriff, and by virtue thereof, in law, was to be deemed in charge of the prisoner. The opinion reaches the conclusion that the sheriff could not recover by precisely the same reasoning which has been given in this opinion as controlling my own judgment and action, and thus fortifies and sustains not only the result which I have reached, but the mental process by which it has been attained.

The clerk will enter in this cause, as if found by the jury, a verdict in favor of the defendants. In pursuance of the stipulation in open court, the plaintiff, if he makes a case for review, will be entitled to insert therein an exception to the order of the court directing such verdict, such exception, how-ever, to be in such form as only to raise and present the legal question which the opinion has discussed.