NEW-YORK, Nov. 1810.

NICOLLS v. INGERSOLL.

---

### NICOLLS *against* INGERSOLL.

THIS was an action of trespass, assault, and battery, and for false imprisonment. The defendant pleaded the *pal;* and the *bail,* or the person deputed by him, for that purpose, may take another state, or at any time and in any place.

*Bail* may break open the outer door of the house, in order to take the principal.

*Bail* may dispute another to take and surrender their principal. The *principal* in

general issue, with liberty to give in evidence any matter of justification.

At the trial, at the last *Green* circuit, the following facts appeared in evidence.

At a county court, held at *New-Haven*, in the state of *Connecticut*, the third *Tuesday* of *March*, 1803, *P. Edwards* became special bail for *Nicolls*, (the present plaintiff,) in a suit brought against him in that court, by *M. Hotchkiss*. The recognisance of bail was as follows: " At a county court, held, &c. Be it remembered, that in the above action, the parties appeared in court, and before plea pleaded, the defendant and *Pierpoint Edwards* acknowledged themselves bound to the plaintiff, in a recognisance of 500 dollars, as special bail for the defendant, conditioned that the said defendant should abide the final judgment that should be given in the said cause." A copy of the recognisance, or bail-piece, was certified by the clerk of the court, on the 1st of *October*, 1808, to which the seal of the court was also affixed; and a certificate of one of the judges of the court, was endorsed, certifying that the clerk, who signed the certified copy of the recognisance, " was a clerk of the court, and keeper of the records, and that full faith and credit ought to be given to such certificate, which was in due form." Upon the same paper was written a power from *P. Edwards*, dated the 5th of *October*, 1808, under his hand and seal, as follows : " Know all men, &c. that I, *P. Edwards*, of, &c. being the same *Pierpoint Edwards* in the annexed copy of a bail-piece named and mentioned, have deputed, authorized, and empowered, in my place and stead, and in my behalf, *Joseph Wilcox*, of *K.*, &c. marshal of the district of *Connecticut*, to take, arrest, seize, and surrender to the sheriff of the county of *New-Haven*, in said state, *John Nicolls*, in said copy of a bail-piece hereunto annexed named, in exoneration and discharge of my recognisance aforesaid, as special bail for

the said *Nicolls*, in said cause ; and to employ such persons and assistants as may be necessary to effect such purpose. In witness," &c.

On this power there was an endorsement, as follows : " I, the within named *Pierpoint Edwards*, do depute, authorize, and empower *Asa Morgan* of *New-Haven*, &c. to do and perform all those things, which, by the within power, I had authorized, deputed, and empowered the within named *Joseph Wilcox* to do and perform, and I do hereby confer on him, the said *Asa Morgan*, all the power and authority, which, by the within instrument I have conferred on the said *Joseph Wilcox*. Witness my hand and seal, the 11th of *October*, 1808."

The plaintiff proved, that on the 18th of *October*, 1808, *Morgan*, and the defendant, went to the house of the plaintiff, in          , in the county of *Green*, about 12 o'clock at night, while the plaintiff and his family were in bed, and demanded the house to be opened, or that they would break it open, and soon after broke open the outer door, and entered, and found the plaintiff rising, and commanded him to dress. They, immediately, hurried him along with them to the river, and pushed him into a boat, without his hat or great coat, which were afterwards brought to him. On being asked why they treated the plaintiff in that manner, *Morgan* said he had a bail-piece and authority to carry the plaintiff to *Connecticut*. The witness understood that *Pierpoint Edwards* was the bail, and had deputed *Morgan* to take the plaintiff, who had promised, the day before, to go along with him, having been called on by *Morgan*, with the bail-piece, for that purpose.

The defendant gave in evidence, the certified copy of the bail-piece, and the power above stated, which *Morgan* had with him, at the time the plaintiff was taken ; and it was proved that the defendant acted by the request of *Morgan*, as his assistant. When *Morgan* demanded entrance, or that he would break the door, a voice answered from an

NEW-YORK,
Nov. 1810.

NICOLLS
v.
INGERSOLL.

upper room, and soon after the outer door was broken open. The plaintiff was unwilling to go, and was forced along, and pushed into the boat, in which they crossed the river to *Hudson*, where a wagon was ready to take the plaintiff away; but he was there discharged by a judge, having been taken by one *Parker*, on another bail-piece, which the witness said " grew out of a suit brought by *Edwards*, against the plaintiff for this very demand." The defendant and *Morgan* treated the plaintiff with great roughness, and the witness expostulated with them for treating the plaintiff so harshly. The plaintiff admitted that *Morgan* had the bail-piece, but declined going, as he was on another bail-piece; and said he had made a settlement with *Morgan*, who had no right to take him. The reason assigned by *Morgan*, for going to the plaintiff's house in the night-time, and for hurrying him away, was the fear of a rescue, as *Parker* had taken the plaintiff on another bail-piece.

The counsel for the plaintiff objected to the evidence, offered on the part of the defendants; but the objections were overruled by the judge.

It was proved by a witness, who was a counsellor of law of the state of *Connecticut*, that by the practice of the courts of that state, special bail might take their principal when they pleased, and surrender him into the custody of the sheriff, without any copy of the bail-piece; that the paper offered in evidence, by the defendant, as a bail-piece, was in the form used in the courts of *Connecticut*.

The judge charged the jury, that the defendant was justified by the authority under which he acted, to take the plaintiff and carry him to *Connecticut*, to surrender him. That special bail had a right to enter, by force, into the house of the principal, after a reasonable demand of entrance and a refusal. That if the defendant had abused the authority under which he acted, he was liable for such abuse. That the questions of fact, whe-

ther the defendant had made a demand to be admitted before the door was broken, and whether undue and unnecessary force had been made use of in attempting to make the surrender, were submitted to the jury for their decision. If the jury were of opinion, in favour of the plaintiff, as to either of those facts, they ought to find a verdict for the plaintiff, otherwise, for the defendant; that in his opinion, there was evidence to justify a belief that *Edwards* had paid the money in the suit, in which he was bail for the plaintiff, in *Connecticut*, or had become liable for the same; for had he not paid the money, or become answerable for the plaintiff, he would not have brought an action on the judgment against the plaintiff in this state; and that though *Edwards* had sued the plaintiff for the same cause, and held him to bail, in this state, he was authorized to take the plaintiff on the bail-piece, and carry him to *Connecticut*, and surrender him there.

The jury found a verdict for the defendant.

A motion was made to set aside the verdict, and for a new trial, on the following grounds:

1. That special bail cannot delegate their power to take and surrender the principal, unless in case of necessity, and such necessity must be clearly shown to exist.

2. That if the power could be delegated, yet, neither the bail nor his deputy can take the principal in a place out of the jurisdiction of the state, in the court of which the recognisance has been taken.

3. That the bail in this case, having paid, and so discharged the judgment in the state of *Connecticut*, and having elected to proceed against the bail in this state, for the same cause of action and hold him to bail here, could not, afterwards, surrender him in the original action.

4. That special bail cannot break open the outer door of the house, to take the principal.

*Van Buren* and *Woodward*, for the plaintiff. 1. There are no authorities in point, to show that the bail may delegate their power. The power of the bail cannot, as is pretended by the defendant, be unlimited, so that they may take the principal at all times, in all places, and under all circumstances. It is evident, from the expression used by the court in *Boardman and Hunt* v. *Fowler*,* that the power of the bail to depute, is confined to a *case of necessity*. This seems to be the reasonable rule. The confidence of the principal in his bail is *personal;* and the power ought not, except *ex necessitate*, to be transferred to a stranger.

*1 Johns. Cas. 314.*

2. The law supposes the principal to be always in the custody of his bail; but the power of the bail over the principal is not derived from any agreement between them, but from the court : and the court cannot authorize the bail to take the principal, in a place where the court could not authorize an arrest. In an *anonymous* case, in *Shower*,† it is said, if the principal abscond, and the bail cannot find him, they shall have a warrant, or tipstaff, to take him out of *White Friars*, or any other pretended place of privilege, because he is a prisoner to the court. No cases are to be met with, which are decisive on this point. The court must, therefore, decide on principle, and with a view to the consequences which may result from the doctrine contended for, by the defendant.

† *2 Show. 202. 3 Vin. 498. Bail, (A. a.) 7.*

3. The defendant had no right to break open the outer door of the plaintiff's house. A man's house is regarded, by law, as his *castle*,‡ and is *privileged*, except for the purpose of serving criminal process.

‡ *5 Co. 91.*

4. The *bail*, in *Connecticut*, having brought an action against the principal, on which he has held him to bail in this state, has thereby waived his right to surrender him, in the original suit. The plaintiff must be considered, in the custody of his bail here, and cannot be taken out of the state.

*E. Williams,* contra.   1. This court have decided, that
bail may depute, *ex necessitate;* and the court will now
presume, that the necessity, in this case, was shown at
the trial.

In *Fisher* v. *Fallows,** Lord *Ellenborough* held, that
the bail were entitled to recover, in an action of *assump-*
*sit,* all the expenses he had been put to, in sending after
the principal, for the purpose of surrendering him; he
said, that if the principal absconds, so that he cannot be
had, the bail may use every proper and necessary step
to secure him.    It is a necessary inference, from this
decision, that the *English* courts consider the bail as
having a right to depute another to take the principal.
In the case of *Meddowscroft* v. *Sutton,*† the executors of
bail were allowed to surrender the principal.   Not a
doubt was suggested of their right to make the surren-
der.   This is a deputation, by operation of law; and it
shows that the right of making the surrender is not
personal, or to be exercised only by the bail themselves.

2. Then can this power be exercised out of the state,
in which the recognisance was taken?   If this power
must emanate from the court, in which the party was
held to bail, then it could not be exercised out of the
jurisdiction of such court; and in the case of a recogni-
sance of bail, in a court of *common pleas,* the bail could
not take their principal, in another county; but a doubt
has never been entertained, that on a bail-piece from any
court of common pleas, the principal may be taken in
any county in the state.    But this power of bail does
not depend upon any authority, or process of the court.
It results from an implied contract, between the principal
and bail, arising out of the relation between them; the
principal having been, at his own request, taken from
the custody of the sheriff, and delivered into the custody
of his bail, where he is bound to remain, and, in con-
templation of law, always does remain.   This engage-
ment follows the principal wherever he goes, and

NEW-YORK,
Nov. 1810.

NICOLLS
v.
INGERSOLL.

* 5 *Esp. Cases,*
*N.P.* 17.

† *Bos. & Pull.*
61.

NEW-YORK,
Nov. 1810.

NICOLLS
v.
INGERSOLL.

\* *Anonymous,* 6 *Mod.* 231.

† 6 *Mod.* 247.

‡ 6 *Term Rep.* 247.

§ 2 *Hen. Black.* 120.

wherever the bail can find him. Thus, it has been well said,\* " The bail have their principal on a string, and may pull the string whenever they please, and render him in their own discharge ; they may take him even upon a *Sunday*, and confine him until the next day, and then surrender him ; the doing it on *Sunday*, is no service of *process*." In *French's* case,† the bail took their principal in the city of *London*, and committed him to the *Compter* there, in order to remove him by *habeas corpus*, and surrender him, in their discharge, in the court of *King's Bench*, in which the original suit was brought ; and before the surrender could be made, he was charged with a debt, at the suit of the *crown* ; but the court held, notwithstanding, the bail might take the prisoner, and surrender him in the King's Bench.

The doctrine is this : the bail may take the principal, *when* and *where* he pleases ; no time is so holy, on which it may not be done ; no place is so sacred, into which he may not enter, for that purpose. He has the principal always on a string, and though extended to the remotest corner of the earth, he may pull it when he pleases. In *Wood* v. *Mitchell*,‡ in the K. B., where the defendant had been convicted of felony, and sentenced to transportation, the court ordered an *exoneretur* to be entered on the bail-piece.

3. In *Sheers* v. *Brooks*,§ Lord *Loughborough* said, when a party is bailed, the bail have a right to go into the house of the principal, as much as himself ; they have a right to be continually with him, and to enter, when they please, to take him." The bail had a right, then, to break the door. The judge, at the time, seemed to think, that there should be a reasonable demand of entrance, and a refusal, before breaking the door. This fact, if necessary to be shown, must have been found by the jury. The court will now intend, that it was proved.

4. It does not satisfactorily appear, for what the suit was brought, against the plaintiff, by his bail, in this state. It may have been for the charges and expenses, the bail

has been put to, in attempting to make a surrender. If it was for the amount of the original judgment, that fact ought to have been clearly and fully proved. There was no evidence, whatever, that the judgment had been satisfied or discharged. I shall not, therefore, argue this point.

As to the abuse of the power, by the defendant, or the actual violence used against the plaintiff, the jury have decided on the fact; and there is no ground for granting a new trial, where the plaintiff could recover, at most, but *nominal* damages.*

THOMPSON, J. delivered the opinion of the court. Several questions were made on the argument of this case. The first in order was, whether bail could depute or authorize another person in his stead, to take and surrender his principal. In *Boardman* v. *Fowler*, (1 *Johns. Cas.* 314.) decided in this court, the surrender was made by an agent of the bail, and one of the objections taken to it was, that bail could not depute for this purpose. By the form of the certificate, however, the principal appeared to have surrendered himself, and the court said they would presume it was done voluntarily. But if it had been necessary to decide the question, they were inclined to the opinion that special bail may depute, *ex necessitate.* The case of *Meadowscraft* v. *Sutton*, (1 *Bos. & Pull.* 62.) shows, that the executor of bail may surrender the principal. This may fall within the rule suggested in the last case; but they both go to establish the general principle, that the right to surrender results from the relation between the bail and principal; that it is to be effected as circumstances shall require, and is not a personal power or authority, to be executed by the bail only. Lord *Ellenborough*, in *Fisher* v. *Fellows*, (5 *Esp. Cas.* 171.) allowed bail to recover against his principal the expenses of sending after him to take him, for the purpose of making a surrender.

NEW-YORK,
Nov. 1810.

NICOLLS
v.
INGERSOLL.

* 3 *Johns. Rep.*
239. 528.

The bail, says he, has a right to surrender the principal in his own discharge, and for his own security; and if the principal absconds, so that he cannot be had, the bail may take every proper and necessary step to secure him. It is not expressly stated, that the person sent after the principal was deputed to take him; but it is fairly to be presumed, that such was the fact. I see nothing, on general principles, against allowing this power to be exercised by an agent or deputy; and no case is to be found where the right has been denied. It is a general rule of law, even with respect to public officers, that their ministerial acts may be performed by deputy; and with respect to private individuals, the law recognises the act of an authorized agent as equal to that of the principal; and there is no principle of policy which renders it necessary to make this case an exception.

The next inquiry is, as to the right of bail to take the principal out of the state in which the recognisance was entered into. I do not perceive how any question of jurisdiction can arise here. The power of taking and surrendering is not exercised under any judicial process, but results from the nature of the undertaking by the bail. The bail-piece is not process, nor any thing in the nature of it; but is merely a record or memorial of the delivery of the principal to his bail, on security given. It cannot be questioned, but that bail in the common pleas would have a right to go into any other county in the state to take his principal; this shows that the jurisdiction of the court in no way controls the authority of the bail; and as little can the jurisdiction of the state affect this right, as between the bail and his principal. How far the government would have a right to consider its peace disturbed, or its jurisdiction violated, or whether relief would not be granted on *habeas corpus*, where a citizen of this state was about to be carried to a foreign country, are questions not now before the court.

A recurrence to a few cases in the books, showing

the relation in which the law considers the bail as stand-
ing towards his principal, will render it obvious, that
the power with which he is clothed is not one restricted
in its exercise to any particular place.  Sir *William
Blackstone* (3 *Com.* 290.) says, the security given for the
appearance of a party arrested, is called *bail*, because the
defendant is delivered to the surety, and is supposed to
continue in his friendly custody, instead of going to gaol.

NEW-YORK,
Nov. 1810.

NICOLL
v.
INGERSOLL.

Bail, in the language of the books, are said (6 *Mod.*
231.) to have their principal always upon a string, which
they may pull whenever they please, and surrender him
in their own discharge.  They may take him up, even
upon a *Sunday*, and confine him until the next day, and
then surrender him.  The doing so on *Sunday* is no ser-
vice of process, but rather like the case where the sheriff
arrests a party who escapes, for that is only a continu-
ance of the former imprisonment.  Lord *Hardwicke*
says, (1 *Atk.* 237. *Ex parte Gibbons,*) it is the constant
language of courts, that bail are their principals' *gaolers,*
and that it is upon this *notion* that they have an autho-
rity to take them ; and that, as the principal is at liberty
only by the permission and indulgence of the bail, they
may take him up at any time.  The same principle is re-
cognised in *Shower,* (*Anonymous Case,* 214.) where it is
said by the court, that bail are but *gaolers, pro tempore;*
and in case a man absconds, and his bail cannot find him,
they shall have a warrant to take him out of any pre-
tended place of privilege, in order to surrender him, be-
cause he is a prisoner to the court, and they may call
him at pleasure.  If the principal is to be considered as
standing in the situation of a prisoner who has escaped
from the arrest of the sheriff, according to the language
of one of the cases, can there be any reasonable doubt
but a sheriff, in such case, would have a right to pursue
and arrest his prisoner in a neighbouring state; and, by
parity of reasoning, bail must have the like authority.
The cases I have referred to are sufficient to show that
the law considers the principal as a prisoner, whose gaol

liberties are enlarged or circumscribed, at the will of his bail; and, according to this view of the subject, it would seem necessarily to follow, that, as between the bail and his principal, the controlling power of the former over the latter may be exercised at all times and in all places; and this appears to me indispensable for the safety and security of bail.

Another question presented was, whether the bail had a right to break open the outer door of the plaintiff's house to make the arrest. The verdict authorizes us to presume, that a demand was made before entry; for this fact was submitted to the jury as being necessary to be shown by the defendant, to render the entry lawful. That the bail may break open the outer door of the principal, if necessary, in order to arrest him, follows, as a necessary consequence, from the doctrine, that he has the custody of the principal; his power is analogous to that of the sheriff, who may break open an outer door to take a prisoner, who has escaped from arrest. But the case of *Shears* v. *Brooks*, (2 *H. Black.* 120.) goes the whole length of this doctrine. Lord *Loughborough* there says, when a party is bailed, the bail have a right to go into the house of the principal, as much as he has himself. They have a right to be constantly with him, and to enter when they please, and take him. The right to break open the plaintiff's house, in the case before us, is fortified by the circumstance of his having been taken a few days before, on the bail-piece. His situation, in point of fact, as well as in judgment of law, was somewhat analogous to that of a party escaping from arrest.

One of the judges made an observation, in the case last referred to, which is very important, and shows, that, on all these points, the rights of the bail should be liberally considered. He said, that a determination, in that case, against the right of the bail to enter the house, would affect the liberty of the subject, as it would make it extremely difficult to procure bail.

The objection, that the bail had discharged the judgment, and for his indemnity had arrested the plaintiff here, and held him to bail, is not supported by the requisite evidence to establish the fact. The loose declarations relative to a bail-piece against the plaintiff, in a cause for the same demand, was not such evidence as the case required, and was in the power of the party. There is nothing in the case to warrant us in saying that the time to surrender had elapsed. If that was the fact, it was susceptible of clear and positive proof; and if the plaintiff intended to rely upon that allegation, he was bound to support it by satisfactory evidence.

Whether the authority to arrest was not abused by the exertion of undue force, or unnecessary severity, has been decided by the jury in favour of the defendant. This was matter of fact, proper for their determination, and was very fairly submitted to them. The verdict, therefore, on this point, ought not to be disturbed.

The motion for a new trial must be denied.

SPENCER, J. not having heard the argument in the cause, gave no opinion.

Rule refused.