THE STATE v. JEFF. LINGERFELT AND JAMES SWANSON.

*Arrest—Bail—Principal and Surety—Recognizance.*

1. Bail in criminal, as well as civil actions, have the right to pursue their principal and arrest him at any time or place: they may if necessary, break and enter his house or pursue him into other States for that purpose, and they may depute these powers to an agent.   No process is needed, the principal being regarded by the law as at all times in the custody of the bail.

2. The fact that the recognizance has been forfeited and a conditional judgment against the sureties has been entered, will not deprive them of their right to arrest and surrender their principal.

INDICTMENT for murder, tried at Fall Term, 1891, of CHEROKEE Superior Court, before *Merrimon, J.*

The defendants were charged with the murder of Marion Cole in the county of Cherokee, in July, 1891.   It appeared in evidence that the deceased was indicted for violation of the United States Revenue Laws, in the Circuit Court of the United States for the Eastern District of Tennessee, and had given a bond, with the usual condition in such case, with one of the defendants as surety thereto, to make his personal appearance before said Court in Knoxville, Tennessee, at the time mentioned therein.   He failed to appear, and thereupon it was considered by the Court that said deceased and his sureties forfeit and pay to the United States "the sum of one thousand dollars, according to the tenor of their bond, unless they appear and show cause to the contrary," and it was ordered that a *scire facias* issue.

There was much evidence upon the trial in the Court below, but it is not necessary to the understanding of the opinion of this Court to report it.

The prisoners asked the Court to charge the jury—

3. That Swanson was one of the bail of the deceased and had a right to pursue him into this State and capture him,

and that that right continued until final judgment was rendered against him, and that he and his co-surety had the right to appoint Lingerfelt as their agent to capture or aid in capturing the deceased.

4. That defendants had the right to use so much force as was necessary to capture deceased.

7. That Lingerfelt had a right to make the arrest and was clothed with the same power for doing so as an officer; that he had a right to arrest him peaceably if he could and forcibly if he must, and if, in making the arrest, he used no more force than was necessary to do so, he was not guilty."

His Honor refused to give these instructions, and charged the jury—

1. That there was no evidence in the case to show that the prisoners had authority or the right to arrest the deceased.

The prisoners excepted. There was a verdict of guilty as to both defendants, and they appealed from the judgment pronounced.

*The Attorney General,* for the State.
*Messrs. W. W. Jones* and *Ben. Posey,* for defendant.

SHEPHERD, J.: The only exception necessary to be considered is addressed to the charge "that there was no evidence in the case to show that the prisoners had authority or the right to arrest the deceased." Our first impression was in favor of the view taken by the Court below, but upon an examination of the authorities (which were probably inaccessible to his Honor) we are 'of the opinion that the sureties on the bail-bond of the deceased had the right to arrest him in this State, and that they could appoint an agent to make such arrest or to assist them in doing so.

It is insisted that the " bail only represents the Court from which his authority emanates, and where the Court has no power to arrest the bail has no power to arrest." Such,

indeed, is the language of Mr. Wharton (3 Vol. C. L , § 2976), but the only authority he cites is from Canada, where it was held that the bail could not follow his principal from New York and arrest him in the British dominions. This it was said would be dangerous to the national independence of Canada.

As between the States, however, a different rule applies, and the distinction is sustained by the highest authority.

In *Nicolas* v. *Ingersoll*, 7 Johns., 145, the point was elaborately discussed, and the Court said that "the power of taking and surrendering is not exercised under any judicial process, but results from the nature of the undertaking by the bail. The bail-piece is not a process, nor anything in the nature of it, but is merely a record or memorial of the delivery of the principal to his bail on security given. It cannot be questioned but that bail in the common pleas would have a right to go into any other county in the State to take his principal; this shows that the jurisdiction of the Court in no way controls the authority of the bail, and as little can the jurisdiction of the State affect this right, as between the bail and his principal."

It was also decided that the bail might " depute to another to take and surrender their principal."

In *Parker* v. *Bidwell*, 3 Conn., 84, it was decided that "bail, or a person deputed by him for that purpose, may take the principal in another State or wherever he may be and detain him or surrender him into the custody of the Sheriff." See also *State* v. *Mahon*, 1 Harrington (Del.), 368.

In *Republica* v. *Gastor*, 2 Yeates (Pa.), 263, the Court said : " The passage from Vattel (quoted on the argument) applies merely to nations entirely independent of each other * * * In the relation in which the several States composing the Union stand to each other, the bail in a suit entered in another State have a right to seize and take the principal in a sister State, provided it does not interfere with the inter-

ests of other persons who have arrested such principal. But where actions have been brought against the party previous to such seizure, the same right does not exist; nevertheless, if they have originated them by collusion with the defendant and merely to protect him from being surrendered by his bail, the Court, on good grounds, would interfere and prevent such improper practice."

The principle asserted is not restricted to bail in civil cases, but applies equally to recognizances in criminal prosecutions. Its application to such cases is explicitly recognized in *Reese* v. *United States*, 9 Wall., 13; *Taylor* v. *Taintor*, 16 Wall., 371, and other cases. Upon this general principle, the Court, in the case last cited, remark: " When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge, and if that cannot be done at once they may imprison him until it can be done. They may exercise their right in person or by agent; they may pursue him into another State; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. * * * In 6 Modern, 231, it is said: ' The bail have their principal on a string and may pull the string whenever they please, and surrender him in their discharge.' The right of the bail in civil and criminal cases are the same."

It is urged by the Attorney General that the right, when exercised in another State, may be attended with inconvenience and trouble, but with the qualifications stated in *Republica* v. *Gastor, supra*, it is not plainly apparent how any evil may result. Be that as it may, the principle is firmly established by a uniform course of judicial decisions, both State and Federal, and until the Legislature sees fit to regulate the manner in which the bail from another State is to

exercise his rights, we do not feel at liberty (especially in a case of life and death) to assume the exceptional position that the common law method as generally recognized in the United States does not apply in North Carolina.

It is urged, however, that the recognizance having been forfeited by the default of the principal to appear in the Tennessee Court, the right of bail to take his principal was extinguished. It will be observed that the judgment was only conditional, and that a *scire facias* was ordered to be issued. It has never been understood in this State, nor do we so understand the common law, that such a judgment has the effect contended for.

The right of the bail to take his principal in a criminal case before final judgment, and to produce him in Court in mitigation of the penalty, is generally recognized in North Carolina, and we have been referred to no authority where the contrary has been held.

It is entirely clear that payment by the bail in criminal cases does not discharge the principal from his obligation to appear in Court, and it is intimated, even in that case, that the government, by way of subrogation, will lend the sureties its aid " in every proper way by process and without process to seize the person of the principal and compel his appearance."

However this may be, we are clearly of the opinion that a mere conditional judgment, like the one before us, does not deprive the sureties of the remedies which previously existed in their favor.

In view of the ruling of the Court that the prisoners (one of whom was a surety and the other his alleged agent) had no authority to arrest the deceased, it became immaterial to instruct the jury as to the manner in which the alleged authority was made known to the deceased, and whether such authority, in the absence of its denial, or a demand, should have been exhibited after the deceased was fully

informed by the agent of its character, and no objection being made to its validity. *State* v. *Garrett*, 1 Winst., 144.

These and other points bearing upon this phase of the case were not, for this reason, we presume, explained to the jury, nor discussed before us on the part of the State.

It is entirely clear from the record, as well as the argument of the Attorney General, that the ruling in question was based upon the principle we have considered, and there being error in this it must necessarily follow that the prisoners are entitled to a new trial.

Error.