# CHARLESTON

## CARR *v.* SUTTON.

Submitted June 8, 1911.  Decided February 27, 1912.

1.  INDEMNITY—*To Bail—Validity.*
    A bond to indemnify bail on a criminal recognizance is not
    void as against public policy.  (p. 419).

2.  BAIL—*Criminal Prosecution—Rights of Sureties.*
    Where the obligation of bail is assumed the surety becomes
    in law the jailer of his principal, the custody of him being but
    a continuance of the original imprisonment, the surety being
    subrogated to all the rights and means which the state possesses
    to make his control effective.  (p. 420).

3.  SAME—*Criminal Prosecution—Arrest of Principal.*
    Even without bail piece, which he may have by statute, the

bail may exercise his right at common law to arrest his principal at any time for the purpose of surrendering him, as an incident to his engagement. (p. 420).

4. INDEMNITY—*To Surety—Release of Indemnitor.*

Where bail in disregard of his duty, and when required by a surety on a bond of indemnity taken by him, negligently fails to arrest and deliver his principal into custody and negligently allows him to escape and be and remain a fugitive from justice, such surety will be discharged, and may on that ground defend any action on his bond by the bail against him. (p. 421).

(BRANNON, PRESIDENT, absent.)

Appeal from Circuit Court, Harrison County.

Bill in equity by William H. Carr against James E. Sutton and others. From a decree for plaintiff, defendants Myers appeal.

*Reversed and Dismissed.*

*Davis & Davis* and *E. B. Templeman,* for appellants.

*Edward G. Smith,* for appellee.

MILLER, JUDGE:

The decree of October 26, 1909, appealed from, among other things, adjudged the defendant Sutton indebted to the State of West Virginia upon his bail bond, on which plaintiff Carr was surety, in the sum of $2,619.85, with interest and costs; and that the defendant, Rezin C. Davis, and the appellants, Jesse Meade Myers, and Harvey G. Myers, who with said James E. Sutton, as principal, and Alverta M. Sutton, not served with process, signed as sureties the bond to Carr, sued on, to indemnify him as bail for Sutton, should pay to the State of West Virginia, said debt and costs in exoneration of Carr.

From said decree appellants, Jesse Meade Myers and Harvey G. Myers, have appealed.

In their answers to the bill, among other defenses interposed and relied on here are these: First, that said bond of indemnity given to Carr, is void as against public policy; Second, that it is void, because the name of R. C. Davis, who signed the original bond, referred to as the burned bond, was forged to the duplicate bond, taken and delivered to Carr, and appellants

thereby discharged; Third, that plaintiff, Carr, though notified and required by his indemnitors, before and after the indictment, to do so, had negligently, willfully and wrongfully failed, in discharge of his recognizance of bail, to arrest Sutton and deliver him into the custody of the law, but on the contrary had allowed him to escape and be and remain a fugitive from justice. Wherefore and by reason whereof appellants had been thereby discharged as sureties from any and all liability to Carr. And they prayed for relief accordingly.

As to the first point. The bond of indemnity here involved is the identical bond we had before us, in *Carr* v. *Davis,* 64 W. Va. 522. The point was made in that case that the bond was void on principles of public policy, and ought not to be enforced, for the relief of the bail. The proposition was there denied. That decision having been by a divided Court, we are strongly urged by counsel in this case to reconsider it, but the Court standing as it did then is not disposed to do so, and is of opinion to overrule the point.

We are likewise of opinion to overrule the point, that the name Rezin Davis on the duplicate bond is a forgery. Davis was adjudged in the former case and has been in this to be liable on the bond; he has not appealed, and appellants have in no way been prejudiced. Moreover, on conflicting evidence the court below ruled against appellants on the question of fact. Certified copies of two decrees in other suits against Davis, lodged here, though not a part of the record, show that real estate of Davis has been sold to satisfy his liability to Carr. Of course we could not look to those decrees if the fact was material, but we do not regard it so.

The last point, that appellants have been discharged by the wrongful and willful negligence of Carr, presents a serious question. It will prove enlightning to first inquire what are the rights, duties and obligations of the bail, with respect to the person of him who, standing charged with crime, is committed to him as bail. By statute, section 7, chapter 156, Code 1906, if the accused be let to bail, the recognizance shall be for his appearance before the court, having recognizance of the case. The condition of the recognizance, signed by Sutton and Carr, involved here, was conditioned that Sutton should appear on the

first day of the next term of the circuit court of Harrison county, to answer any indictment that might be preferred against him for the offense charged, and not to depart thence. without leave of the court. The record shows that the next term of that court began on the 11th day of December, 1906, and that an indictment was returned against Sutton, by the grand jury, December 13, the third day of the term. The recognizance of Carr, therefore, bound him to have Sutton before the court on the first day of the term, and to not allow him to depart therefrom without leave of the court, a very high obligation imposed by law, which he voluntarily assumed, on becoming bail, and to which he could not be negligent or indifferent.

But while the obligation of Carr thus assumed was great, his power over Sutton, given by section 8, chapter 156, Code 1906, as well as by the common law, was also great. By said section 8 he was entitled at any time on application to the clerk to a bail piece, authorizing him or his agent, at any time, and at any place, within or without the state, and without further process, to arrest Sutton so delivered to bail and commit him to jail. 3 Am. & Eng. Ency. Law, 708, and cases cited from numerous states.

Moreover, the law is, that when the obligation of bail is assumed the surety becomes in law the jailer of his principal, and his custody of him is but a continuance of the original imprisonment, and though he cannot actually confine him he is subrogated to all the other rights and means which the State possesses, to make his control of him effective. 3 Am. & Eng. Ency. Law, 708, citing *Reese* v. *United States,* 9 Wall. 13; *United States* v. *Ryder,* 110 U. S. 729; *State* v. *Lingerfelt,* 109 N. C. 775. See also 5 Cyc. 126. The statute giving the surety right to bail piece is but cumulative of his common-law remedy, for without process he has the right to arrest his principal for the purpose of surrendering him as an incident to his engagement. 3 Am. & Eng. Ency. Law, *supra,* citing note 3, *Taylor* v. *Taintor,* 16. Wall. 371; *State* v. *Cunningham,* 10 La. Ann. 393; *State* v. *Reiss,* 12 La. Ann. 166; *State* v. *Lingerfelt, supra;* *Com.* v. *Brickett,* 8 Pick. 138; *Nicolls* v. *Ingersoll,* 7 Johns. 145.

In letting a prisoner to bail the object of the state is to se-

cure the presence of the prisoner to answer the judgment of the court, and not the money that may be recovered upon a defaulted recognizance. And so according to the authorities cited, the powers given the bail over his principal are very great to enable him to perform his onerous duties and obligations to the state, which he has voluntarily assumed.

It was mainly because of this onerous duty and obligation imposed by law upon bail, that the judges concurring in the opinion of the Court in *Carr* v. *Davis, supra,* were persuaded to hold a bond of indemnity given bail not void as against public policy. Their notion was that by taking the bond bail could not, without endangering his security, neglect or become indifferent to the obligations of his own bond. In my individual opinion the correctness of that decision can rightly be predicated upon no other theory.

Has plaintiff then by his negligence or indifference discharged appellants from liability on this bond? We hold that he has. We think the general rule applicable in other cases, where a creditor neglects his duty or refuses to proceed when required by a surety should be applied in cases of sureties on a bond to indemnify bail. Our decisions affirming the general rule hold that where a creditor does any act injurious to the surety, or inconsistent with his rights, or if he omits to do any act when required by the surety which his duty imposes on him, and the omission proves injurious to the surety, the latter will be discharged, and that he may set up such conduct as a defense to any suit brought against him, if not at law, at all events in equity. 1 Story Eq. Jur., section 325; *Leonard* v. *County Court,* 25 W. Va. 45; 13 Dig. Va. & W. Va. Rep. 22-24.

Without detailing the evidence it shows conclusively to our minds, that at the time appellants signed the bond Carr was notified by them to keep a close surveillance over Sutton, and if he observed any disposition to escape, to at once arrest him and deliver him to jail; and that if an indictment should be returned against Sutton, he should immediately deliver him into the custody of the officers. Carr knew and had been warned of the dangers to himself and appellants. He does not pretend that he procured Sutton's appearance on the first day of the term, or on the day of the indictment, or at any time. His own evi-

dence, in our opinion convicts him of having been at Clarksburg, where the court was in session, the day after the indictment and that he there dined with Sutton, and had him in his absolute power and control, but made no attempt to secure his delivery into custody; but on the contrary allowed him to escape. He does pretend that after Sutton failed to meet him at the office of Sutton's attorney, he made some effort to find him, going to several places, but apparently did not go to Sutton's house; applied for no bail piece, but with the utmost indifference left the State on business and did not return for several days. The evidence though conflicting tends also to show that he was with Sutton in Clarksburg, on December 18, or 19; and that he was within reach of him in Parkersburg, when he was seen by his attorney a short time afterwards. The evidence tends to show also that he made some feeble efforts to locate Sutton afterward, but his conduct was indifferent, not up to his duty and obligation to the appellant; far from it.

Because of Carr's neglect to discharge the obligation of his own bond, we think appellants are entitled to be discharged from theirs, and our opinion is to reverse the decree below in so far as it affects appellants, and as to them to dismiss the bill, with costs in this Court and in the court below, and it will be so ordered.

*Reversed and Dismissed.*