Plaintiffs brought this suit on 12 September, 1914, to recover the sum of $543.95, alleged to have been fraudulently converted to his own use *Page 686 
by defendant J. M. Glazener, who was their partner in the book business. The defendant was arrested by the coroner, on 14 September, 1914, under proceedings in arrest and bail taken for that purpose, and he, and his codefendants, J. M. Allison and D. J. Glazener, as his sureties, executed an undertaking for his discharge from arrest as required by the statute, and J. M. Glazener was released. He was afterwards arrested to await a warrant in extradition proceedings from South (632) Carolina, and was imprisoned in the County jail by the sheriff of the county. The condition of the defendants' bond is as follows: "If the defendant is discharged from arrest, he shall at all times render himself amenable to the process of the court during the pendency of this action and of such process as may be issued to enforce the judgment therein." While the defendant was in the jail there was a conference in the law office of the defendant's attorney, between said attorney, the defendant, and J. M. Allison, one of his sureties, and the South Carolina officers, and as they left the office R. N. Nicholson, the deputy sheriff who then had defendant in custody, and who was jailer and had charge of him as deputy sheriff and jailer, signed a receipt, which was delivered to defendant's attorney, and by which he acknowledged that the surety, J. M. Allison, had surrendered the body of the defendant J. M. Glazener to him, and that he had taken him in exoneration of his bondsmen in the above entitled case. In connection with the giving of this receipt the court found the following facts:
"M. J. Glazener was not present at that time, and did not then in person surrender or attempt to surrender the defendant to the said R. N. Nicholson. After the conference above referred to, and the signing of the paper, R. N. Nicholson took the defendant to the county jail. At the time the receipt was presented to the said Nicholson to be signed, he did not read it, but inquired of defendant's attorney what it was, and the attorney replied that it was just a paper showing that he held the defendant in jail without bond, for the officers of South Carolina. That R. N. Nicholson can read and write."
The court further found as facts: "On the following morning the bondsmen, M. J. Glazener and J. M. Allison, procured from the clerk of the Superior Court a certified copy of the undertaking signed by bondsmen and the defendant in the arrest and bail proceedings, and went to the office of the sheriff, where they tendered the copy of said undertaking to the sheriff and offered to surrender the defendant. At the time the copy of the undertaking was tendered to the sheriff, the defendant was in jail and not in the custody of the bondsmen. The sheriff declined to receive the copy of the undertaking, on the ground that he himself was a party to the action in which the defendant had been arrested, and in which the undertaking was given. Thereupon the bondsmen *Page 687 
left the certified copy of the undertaking in the office of the sheriff of the county. That immediately after the sheriff had refused to receive the certified copy of the undertaking aforesaid, the bondsmen and their attorney went with the coroner to the county jail. When they arrived there the jailer was absent, defendants' attorney, with the consent of the jailer's wife, who was there living in the jail, obtained the keys from her, went to the cell, in company with the coroner and the said bondsmen, opened the cell, and took the defendant out of it into the corridor of the jail, and there stated to the coroner that they (633) delivered to him the defendant, together with a certified copy of the undertaking. That the corridor of the jail was open. That after the bondsmen stated to the coroner that they delivered the prisoner to the coroner, together with the certified copy of the undertaking, the coroner took the prisoner back into the cell and locked the cell and returned the keys to the wife of the jailer, and notified the wife of the jailer that he had relocked the cell with the defendant inside."
On 6 April, 1915, the bondsmen notified plaintiffs that during the April term of the Superior Court they would move before the judge thereof for their exoneration as bail. This motion was submitted on 17 April, 1915, and Judge Long, who presided at that term, declined at that time to hear it, but continued it to the next term. The bondsmen then renewed their motion before Judge Harding, at July Term, 1915, and asked that it be heard before the trial of the case. This motion was refused, though the jury had not been impaneled, but the court stated that it would hear and decide the motion after the trial, and treat it as if heard before. The jury returned a verdict in favor of the plaintiff for $505.11, and also found the issue of fraud against the defendant. Plaintiffs moved for judgment, whereupon the bondsmen insisted that their motion be heard. Both motions were continued to November Term, 1915, when the court overruled the motion of the bondsmen, and gave judgment upon the verdict for the plaintiffs against the defendant and his sureties on the undertaking. The latter then excepted and appealed.
We had the benefit of argument upon several questions which we deem it unnecessary to decide, as we are of the opinion that the judgment below was erroneous on another ground, and it would be premature at this time to go beyond the one upon which we rest our decision. The other points may never be again *Page 688 
presented. The doctrine is well settled that when bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge, and if that cannot be done at once they may imprison him until it can be done. They may exercise their right in person or by agent; they may pursue him into another State; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is (634) needed. It has long since been said that the bail have their principal on a string which they may pull whenever they please, and surrender him in their discharge (6 Modern, 231) the right of bail in civil and criminal cases being, in many material respects, the same.Taylor v. Tainter, 83 U.S. (16 Wall.) 366; S. v. Lingerfelt, 109 N.C. 775;Sedberry v. Carver, 77 N.C. 319; Adrian v. Scanlin, ibid., 317. The books have clearly expressed this idea in regard to the relation of the principal to his bail, and the authorities are pretty well agreed as to it. "A man's bail are looked upon as his jailers of his own choosing, and the person bailed is, in the eye of the law, for many purposes esteemed to be as much in the prison of the court by which he is bailed as if he were in the actual custody of the proper jailer." 2 Hawk. P. C., 140. It is said in 1 Hale P. C., 325: "Yet the law is all one of he be under bail, for he is in custodia still, for the bail are, in law, his keepers." Wharton, in his work on Criminal Pleading and Practice, says: "The principal is supposed to be in the bail's constant custody, and the latter being the former's jailer, may at any time surrender him to the custody of the law." Sec. 62, Am. Anno. Cases, 1912D (note to S. v. Hyde,124 Mo., 200), at p. 209. And this Court said by Shepherd, J., in S. v.Lingerfelt, supra, quoting, in part, from Nicholas v. Ingersoll, 7 Johns. (N. Y.), 145: "The power of taking and surrendering is not exercised under any judicial process, but results from the nature of the undertaking by the bail. The bail-piece is not a process, nor anything in the nature of it, but is merely a record or memorial of the delivery of the principal to his bail on surety given. It cannot be questioned but that bail in the common pleas would have a right to go into any other county in the State to take his principal; this shows that the jurisdiction of the court in no way controls the authority of the bail, and as little can the jurisdiction of the State affect this right as between the bail and his principal." It was also decided that the bail might "depute to another to take and surrender their principal." In Parker v. Bidwell,3 Conn. 84, it was held that "Bail, or a person deputed by him for that purpose, may take the principal in another State or wherever he may be and detain him or surrender him into the custody of the sheriff," citing, also, *Page 689 S. v. Mahon, 1 Harr. (Del.), 368. It is also said that when the obligation of bail is assumed the surety becomes in law not only the jailer of his principal, as his custody is constructively a continuance of the original imprisonment, but, though he cannot confine him except where actually necessary, and temporarily, for the purpose of surrender, he is subrogated to all the other rights and means which the State possesses to make his control of him effective. 3 Am. and Eng. Enc. of Law (2d Ed.), 708, citing Reese v. U.S., 19 U.S. (9 Wall.) 541; U.S. v.Ryder, 110 U.S. 729; S. v. Lingerfelt, supra (S. c., 14 L.R.A., 605). Note to Carr v. Sutton, 70 W. Va. 417, in Am. Anno. (635) Cases, 1913E. See, also, 5 Cyc., 126. The right of bail to arrest his principal has been likened to that of a sheriff to rearrest an escaping prisoner. 3 Blackstone, 290; Taylor v. Tainter, supra, and cases cited. The bail will be discharged only where the performance of the condition is made impossible by the act of God, the act of the obligee, or the act of the law. Where the principal dies before the day of the performance is a case of the first class; where the court before which the principal is bound to appear is abolished without qualification, or where the bail is released by the plaintiff, are cases of the second class; where the principal is confined in prison by judicial sentence during the period when his surrender is demandable belongs to the third class. Sedberry v.Carver, supra; People v. Bartlett, 3 Hill, 571; Taylor v. Tainter, supra;
Co. Litt., 206; Bacon Abr., Title Conditions. The reason why imprisonment of the principal under judicial sentence discharges the bail is that it renders a surrender of the principal by the latter impossible; and being the act of the law, it excuses the failure. Sedberry v. Carver,supra. We have so far been stating the rules of the common law concerning bail. They have been somewhat modified by statute in this and other jurisdictions, as we will presently show. The bail in this case contend that they are entitled to be discharged as such, by reason of the facts found by the judge, and the clear and indisputable inferences from them. This may or may not be so, but the time has not yet arrived for its decision. They assert that they have surrendered the defendant to the sheriff, to his deputy, and, also, through the coroner, to the person in charge of the jail (who was the jailer's wife), and that if their attempted surrender, after their diligent and exhaustive efforts, was unavailing, that it, therefore, was impossible for them to surrender him, because he was in prison by order of the law or the act of the sheriff, and this impossibility of surrender exonerates them. They charge that the sheriff was in the unlawful custody of their principal, having no process for his arrest and no right to his control, and that, therefore, he acted in his own wrong in not holding and detaining the prisoner, at their request, or giving him up to them, so that they might make a *Page 690 
more formal surrender of him, they having not only the general right to arrest without process and surrender him, but also statutory authority to do so, because they had before secured from the clerk of the court a certified copy of the undertaking, signed by their principal and themselves, and tendered it to him, and in answer to the sheriff's reason for not accepting this paper and detaining the defendant, that he was interested as plaintiff in the action and disqualified to act, they say that he would not be serving process, but merely would, as keeper of the jail under the statute, be receiving into his custody or detaining the defendant (636) under process held by them, or under their authority, as his bail, to act without process, there being no one except the sheriff as keeper of the jail, or his deputy in actual charge thereof, to whom the surrender could be made. They contend that process to the coroner was not required, as they had all the rights to arrest possessed by the sheriff, or by the coroner, or by any other officer having authority to serve process. They say, therefore, that as the sheriff, who is plaintiff, acted wrongfully in not detaining their principal, they are exonerated, and in this connection they rely upon the rule stated by some of the authorities, and especially in Carr v. Sutton, 70 W. Va. 417, "That where a creditor does any act injurious to the surety, or inconsistent with his rights, or if he omits to do any act when required by the surety, the latter will be discharged, and that he may set up such conduct as a defense to any suit brought against him, if not at law, at all events in equity," citing 1 Story Eq. Jur., sec. 325; Leonard v. County Court, 25 W. Va. 45; 13 Dig. Va. and W. Va. Reports, 22-24. See, also, Taylor v. Tainter, supra.
We have stated these several contentions, not for the purpose of passing upon them, but as preliminary to a proper consideration of the real and essential question in this appeal, and as conducive to a better understanding of it.
Our statute provides that when an action is brought for the recovery of a debt contracted by fraud, and the jury find the fact of fraud, the plaintiff as creditor, may take judgment for his debt against the defendant, as his debtor, and execution shall then issue against the latter's property. If it is returned "Nulla bona" (no goods or chattels, etc.), and the defendant has given bail in the action, and is at large, an execution may issue against his person. If this writ is returned "Non estinventus" (not to be found, etc.), the plaintiff may then move, on ten days notice, for judgment against the bail. The latter may then answer and set up any defense open to them, such as death of the principal, a legal surrender of him, release or discharge of him or them, or any other matter which if found to exist, will entitle them to an exoneration. The provisions of the statute applicable in such a case are as follows: *Page 691 
SEC. 735. A defendant arrested may at any time before judgment apply on motion to vacate the order of arrest or to reduce the amount of bail. And he may deny upon oath the facts alleged in the affidavit of the plaintiff on which the order of arrest was granted, and demand that the issue so raised by the plaintiff's affidavit and the defendant's denial be submitted to the jury and tried in the same manner as other issues are tried by a jury; and if the issues are found by the jury in favor of the defendant, judgment shall be rendered discharging the defendant from arrest and vacating the order of arrest, and the (637) defendant shall recover of the plaintiff all costs of the proceedings in such arrest as he shall have incurred in defending the said action.
SEC. 738. The defendant may give bail by causing a written undertaking, payable to the plaintiff, to be executed by sufficient surety to the effect that the defendant shall at all times render himself amenable to the process of the court during the pendency of the action, and to such as may be issued to enforce the judgment therein.
SEC. 751. The bail may be exonerated, either by the death of the defendant or his imprisonment in a State Prison, or by his legal discharge from the obligation to render himself amenable to the process, or by his surrender to the sheriff of the county where he was arrested, in execution thereof, at any time before final judgment against the bail.
SEC. 752. At any time before final judgment against them, the bail may surrender the defendant in their exoneration, or he may surrender himself to the sheriff of the county where he was arrested, in the following manner:
1. A certified copy of the undertaking of the bail shall be delivered to the sheriff, who shall detain the defendant in his custody thereon, as upon an order of arrest, and shall, by a certificate in writing, acknowledge the surrender.
SEC. 753. For the purpose of surrendering the defendant, the bail, at any time, or place, before they are finally charged, may themselves arrest him, or by a written authority, indorsed on a certified copy of the undertaking, may empower any person over 21 years of age to do so.
SEC. 754. In case of failure to comply with the undertaking, the bail may be proceeded against by motion in the cause on ten days notice to such bail.
It will be seen from these provisions that judgment should not be given against the bail merely upon the verdict finding the existence of the debt and that it was contracted by fraud, nor until the property of the debtor has been exhausted by execution and process has issued against his person and returned "Not found," and notice thereof of ten days has been given to the bail, and they have a day in court to answer the motion *Page 692 
for judgment against them. This is not only the law, but, in one form or another, has substantially been the law for centuries. Formerly, after a return of nulla bona and non est inventus, the bail was proceeded against, at one time by action, and at others by scire facias. The remedy by action was revived by C. C. P., sec. 160, and took the place of the former scire facias; the remedy at present being by motion. Revisal, sec. 754. It is a mistaken notion that in letting a defendant or a prisoner to bail, the object is not to secure his presence to answer (638) the process of the court, but to obtain the money that may be recovered upon a defaulted bond or recognizance. It is true that if he defaults, he may finally be taken and imprisoned until, in a civil action, he pays the debt or complies with any other judgment or order of the court, or is otherwise discharged by the law, as, for instance, by taking the insolvent debtor's oath in proper cases. The primary and main object of the law is to reach his person and to keep him within the jurisdiction and the call of the court upon process issued for him. If, when the sheriff returns upon an execution against his property, "Nothing to be found," or his property is exhausted, and an execution is then issued against his person, he is then arrested, or taken in custody, the sureties are discharged, because he has rendered himself "amenable to the process of the court." The bail must see to it that he is kept within the jurisdiction of the court, where he can be taken when he is wanted, the word "amenable" as used in the statute meaning "answerable" or "responsive." This is the condition of their bond, as will be clearly seen by reading it. "When a recognizance is entered into for the appearance of a defendant, . . . said defendant, in legal contemplation, is delivered into the `friendly custody' of his sureties, instead of being committed to jail. They have control of his person, and are bound at their peril to keep him within the jurisdiction of the court, and to have his person ready to surrender when demanded. If they become apprehensive for their own safety, they can arrest and commit him to prison at any time." Devine v.State, 37 Snead, 623. But it is not necessary to further discuss this question, as our cases have settled the construction of the statute. The Court, by Justice Bynum, asked and answered the question as to the sureties' liability, in Sedberry v. Carver, supra, where he said: "What constitutes a breach of this undertaking? Certainly there is no breach until the plaintiff first seeks the body of the defendant for the satisfaction of his judgment. When execution was issued against the person of Jackson, it was, and not before, the duty of the defendant to surrender himself, or of the bail to surrender him to this demand by legal process. When that execution issued, Jackson was out of prison and at large, and in legal contemplation was in the custody of his bail. The failure to surrender him then was a breach of the undertaking of the bail. This *Page 693 
breach was a continuous one until the bail had been charged by a final judgment against him on the undertaking. From the issuing of the execution against the body until final judgment against the bail there was a continuous demand for the body of the principal, and an increasing duty upon the bail at any and all times during that period to surrender his principal in his own discharge." If there has been a prior surrender by the bail of their principal, or if there be any other fact which exonerates them, they may plead it in defense when they are moved against, after notice, under the statute. It was held (639) in Patton v. Gash, 99 N.C. 280: "After judgment in an action in which the defendant might have been arrested, and in which an order of arrest was duly served, the plaintiff is entitled to a summary judgment against the sureties upon the defendant's undertaking — it appearing thatexecution has been issued against his property and person without effect."
(Italics ours.) And Justice Shepherd said in S. v. Lingerfelt, supra: "It is urged, however, that the recognizance having been forfeited by the default of the principal to appear in the Tennessee court, the right of bail to take his principal was extinguished. It will be observed that the judgment was only conditional, and that a scire facias was ordered to be issued. It has never been understood in this State, nor do we so understand the common law, that such a judgment has the effect contended for. The right of the bail to take his principal in a criminal case before final judgment, and to produce him in court in mitigation of the penalty, is generally recognized in North Carolina, and we have been referred to no authority where the contrary has been held. It is entirely clear that the payment by the bail in criminal cases does not discharge the principal from his obligation to appear in court, and it is intimated, even in that case, that the Government, by way of subrogation, will lend the sureties its aid `in every proper way by process and without process to seize the person of the principal and compel his appearance.' However this may be, we are clearly of the opinion that a mere conditional judgment, like the one before us, does not deprive the sureties of the remedies which previously existed in their favor." The recent cases ofHowie v. Spittle, 156 N.C. 180; and Turlington v. Aman, 163 N.C. 555, put the same construction on the statute. As another reason why judgment should not go against the bail, in the first instance, as was done in this case, is the right of the defendant to surrender himself in exoneration of his bail, when called upon by the mandate of process to do so. Revisal, sec. 751; Dick v. Stoker, 12 N.C. 91; S. v. Schenck,138 N.C. 560, 3 R. C. L., 49, sec. 55. This was so under the old law where bail was given upon a ca. sa. Judge Battle said in Mears v.Speight, 49 N.C. 420: "As he appeared, no judgment could be rendered against him and his surety in the bond, because the surety was responsible *Page 694 
only for his appearance, "citing Watson v. Willis, 24 N.C. 17. It was there held that no judgment can be entered upon a ca. sa. bond if the debtor appears, although his surety does not surrender him. It may be that the defendant will be dead or in prison under sentence, or that he will surrender himself to the sheriff. In either of these events his bail will be discharged, and in the last case he would have answered the process and, of course, have kept himself amenable thereto, and there will be no need of deciding as to whether they have been exonerated. (640) The surrender mentioned in Revisal, sec. 751, is not confined to one made by the bail, but extends also to the voluntary surrender by the principal of himself, as the above authorities show. In Dick v. Stoker, 12 N.C. 91, Judge Henderson said that "The principal himself may, without the agency or knowledge of his bail, surrender himself, and the sheriff is as much bound to receive him as if surrendered by the bail."
We have been referred, in what is said above, to cases where no process has been or could issue for the defendant's apprehension before the final body execution provided for by the statute. There was no reason for issuing process against him in this case before a final execution has been issued against his person, after judgment for the debt.
We have treated the judgment in this case as virtually one against the sureties, as it provides that in case execution against the defendant's property is returned unsatisfied an execution shall issue against his person, and in case the latter is returned "unsatisfied," evidently meaning "not to be found," that execution shall issue against the bail, without providing for any motion on notice, as required by Revisal, sec. 754. The statute clearly contemplates that there shall be judgment against bail only on motion after legal notice. The court must adjudge, after hearing on notice, that the facts essential to the liability of the bail exist before subjecting them to a judgment and execution. Formerly, as we have shown, this was done first by scire facias, and then by a civil action, in which, of course, judgment has to be rendered before an execution could issue, and the bail might contest the plaintiff's right to a recovery against them by setting up valid defenses. The procedure now is mere summary, but in other respects is analogous to the earlier remedy. In Turlington v. Aman, supra, we disapproved a judgment such as was rendered in this case, and suggested a strict and regular compliance with the statute. Persons who become bail are favored by the law, and the powers given the bail over his principal are given to enable him more easily to perform the onerous duties and obligations which he has voluntarily assumed. He will not be charged unless in exact accordance with his undertaking. His lot is sometimes a hard one, and the law, though it will favor the creditor, to the extent that it is necessary *Page 695 
to enforce his legal rights, will ameliorate the condition of the bail when to do so will not conflict therewith. Both are to be considered, and, after all is said, it results in this, that the provisions of the statute, so far as applicable, must be followed.
It is singular, that neither party, the sheriff (who was also plaintiff) nor the bail, notified the Governor that the prisoner, confined in the jail and awaiting the issue of an extradition warrant for him, upon the demand of the Governor of South Carolina, was also in the custody of his bail, who had a certified copy of the undertaking (known elsewhere as a bail-piece), and were entitled to be considered before (641) he issued his warrant for his extradition, or the same was executed if already issued. It is held by a court of high authority in such matters that he (the Governor) would have the moral right to hold the prisoner here until he paid the debt, and that no power exists to compel him to do otherwise. Taylor v. Tainter, 83 U.S. (16 Wall.) 366; Beaversv. Hanbert, 198 U.S. 77. In other jurisdictions it is held that it is his duty to refuse extradition until the bail are relieved. In re Troutman,24 N.J. L., 634; Matter of Briscoe, 51 Hon. Pr. (N. Y.), 422, and the case of In re Harriott, 18 R. I., 12, would also apply, as here the warrant of extradition had not been served when the sheriff was tendered a certified copy of the undertaking by the bail. One case holds that the fact of the accused being in custody on a civil charge is no reason for a refusal to surrender him to the demanding State. In reRosenblat, 51 Cal. 285. If we had to choose between these conflicting views, we would, perhaps, adopt the one indorsed by the decision of the highest Federal court, and especially as it is so well supported by the New Jersey, New York, and Rhode Island cases. When the motion to enter the exoneration was first made, the accused was still in jail, and the presiding judge, no doubt, would have ordered the sheriff, as jailer, to detain the prisoner subject to the action of the Governor, so that if not extradited he could be held as upon a surrender of his bail. In a case somewhat analogous, Justice Bynum said: "(1) That the statute, C. C. P., sec. 161, has no application to imprisonment of any duration whatever in another case under civil process, for, as was said in Granberryv. Pool, the bail may pay the debt and surrender his principal; (2) It has no application where the term of imprisonment under criminal
process has expired before final judgment against the bail, for in such case the principal can be delivered; and (3) It would seem that no temporary imprisonment within the State will exonerate the bail, for in such case the court may, upon the motion of the plaintiff or bail, order the principal to be retained a prisoner until the debt is paid; and the service of the order on the jailer shall authorize him to detain the debtor; and this shall be deemed a surrender of the principal in discharge *Page 696 
of the bail." Sedberry v. Carver, supra. When the sheriff refused, either legally or illegally, to detain the principal, already in his custody, it would seem, under the view just stated, that the judge could have ordered the principal to be continued in his custody, as jailer, as upon a surrender by his bail, especially as the sheriff then held no process against the principal. But if this right existed, it has been lost, as the accused has been extradited. We are not now passing upon the validity of the sheriff's excuse. All these matters may be set up when a motion is made to subject the bail, if it becomes necessary to (642) do so, that is, if the bail are not sooner discharged by the death or voluntary surrender of their principal, or released in some other way.
It does not appear what became of the prisoner after his extradition. Was he convicted and sentenced in South Carolina, and, if so, for what time; or was he released, and has he remained in the other State or returned to this State? If the case comes back to us, answers will doubtless be made to these questions, so that we may decide the difficult proposition upon a full disclosure of all the facts. It is not clearly found whether the deputy sheriff was induced by what occurred between him and the attorney to sign the paper acknowledging the surrender of the principal. The evidence is stated, but not the ultimate fact to be deduced therefrom.
The judgment will be set aside as to the bail and retained as to the principal defendant. Let execution be issued to the proper officer, and other proceedings be had thereafter according to the statute.
Error.
Cited: S. v. Finch, 177 N.C. 605; Stepp v. Robinson, 203 N.C. 804, 805.