STATE OF NORTH CAROLINA v. BENJAMIN FRANKLIN HOPPER

No. 17

(Filed 10 May 1977)

1. Criminal Law § 102.8— defendant's failure to testify — district attorney's jury argument — no prejudice

   Defendant was not prejudiced by the district attorney's allegedly improper argument to the jury concerning defendant's failure to present witnesses to contradict the State's evidence since (1) defense counsel did not object to the challenged remarks at the time nor was the attention of the court called to them; (2) the impropriety in the argument, if any, was not gross and the court was not required to censure the argument and give curative instructions *ex mero motu;* (3) defendant, having offered no evidence, had the closing argument to the jury, and counsel was thus afforded an opportunity to answer effectively any and all remarks of the prosecuting attorney; and (4) the trial court's charge to the jury contained an admonition with respect to defendant's failure to testify which was sufficient to remove any prejudice that might have resulted from the challenged remarks of the prosecuting attorney.

2. Criminal Law § 113.1— plea bargaining by witness — jury instruction — summary of evidence

   The trial court's jury instruction concerning the plea bargaining of a witness amounted to a summary of the witness's own testimony and did not permit the jury to conclude that the trial judge was endorsing the testimony of the witness.

3. Criminal Law § 113— jury instructions — law arising on evidence — no hypothetical facts

   Defendant's contention that "the court in attempting to explain common law robbery stated affirmatively, where it should have stated hypothetically the matter" is without merit, since G.S. 1-180 requires the court to declare and explain the law arising on the evidence in the particular case and not upon a set of hypothetical facts.

**4. Jury § 6— examination of prospective jurors — limitation not prejudicial**

Defendant's right to examine prospective jurors was not unreasonably restricted where one question to which the State objected was clearly improper and another to which the State objected was answered by the prospective juror anyway; both prospective jurors involved were excused; and defendant exhausted only eleven of his fourteen peremptory challenges.

**5. Criminal Law §§ 95, 162.2— objectionable evidence — time for objecting — limiting instruction**

Defendant was not prejudiced by the admission of testimony from a sheriff in Georgia concerning a message received by him about defendant from a sheriff in N. C., since defendant lodged no objection until the entire message from the N. C. sheriff had been read to the jury; moreover, even if admission of the message was error, the limiting instruction given by the court was sufficient to erase any possible prejudice.

**6. Criminal Law § 89.3— witness's prior statements — admissibility for corroboration**

The trial court did not err in allowing into evidence pretrial statements made by a State's witness where the court restricted the admissibility of the statements to corroborative purposes only.

**7. Homicide § 21.5— first degree murder — sufficiency of evidence**

Where there was evidence of premeditation and deliberation as well as evidence of murder committed in the perpetration or attempt to perpetrate robbery in violation of G.S. 14-17, the trial judge was well within the law when he submitted first degree murder as a permissible verdict.

**8. Criminal Law § 15— change of venue — special venire — discretionary matters**

Motions for change of venue or special venire are addressed to the sound discretion of the trial judge and, absent abuse of discretion, his rulings thereon will not be disturbed on appeal.

**9. Constitutional Law § 80; Homicide § 31.1— first degree murder — life sentence in lieu of death penalty**

A sentence of life imprisonment is substituted for the death penalty imposed in this first degree murder prosecution.

DEFENDANT appeals from judgment of *McConnell, J.*, 14 June 1976 Session, ROCKINGHAM Superior Court.

Defendant was tried upon a bill of indictment, proper in form, charging him with the first degree murder of Earl Junior Manuel on 27 February 1976 in Rockingham County.

The State's evidence tends to show that Earl Junior Manuel left his mother's home on 27 February 1976, as usual, to go to

work at Stoneville Furniture Company. It was pay day and he was paid $79.79 that date. He kept his money on his person in two pocketbooks and a change purse.

Randy Dalton testified that he went to Doug's Poolroom in Madison around 2:30 p.m. on 27 February 1976 and that soon thereafter defendant Benjamin Franklin Hopper, Roger Dalton and Danny Ray "Slick" Dalton arrived. Earl Junior Manuel walked by the poolroom carrying a suitcase and requested someone to drive him to Mayodan. The defendant and Danny Ray "Slick" Dalton took him away in defendant's truck and later returned to Doug's Poolroom without him. On that trip defendant said, "Let's get Junior's money. . . . I can get him with one lick." "Slick" Dalton, however, refused to go along with this plan and it was abandoned.

Later that evening defendant and Randy Dalton saw Earl Junior Manuel in Lefty's Poolroom in Mayodan. Manuel was drunk. Apparently due to their conduct all three were requested to leave and did so. They left in defendant's truck and drove for fifteen or twenty minutes. Defendant stopped, got out of his truck with Earl Junior Manuel, and when they had walked a distance of about twenty feet, defendant swung a liquor bottle at Manuel who hollered and "went down." Defendant then began stabbing Manuel with a knife and told Randy Dalton he must stab Manuel also or else defendant would stab him. Randy Dalton was afraid, took the knife and, guarding the blade so as not to stab deeply, stabbed Manuel five to eight times. Defendant and Randy Dalton then loaded Manuel onto the pickup truck, took him to the Lindsey Bridge nearby and threw him into the Dan River. Defendant then gave Randy Dalton a pocketbook which he threw out the window. It was later found near the bridge abutment with $9 in it and two $20 bills nearby.

Randy Dalton and defendant then went to the home of Earl and Mary Duncan. Mary Duncan is defendant's sister. Upon entering the house, defendant announced in an agitated tone, "We just killed somebody." Randy Dalton then told the Duncans that defendant had just killed somebody but did not detail any of the circumstances. After twenty to thirty minutes, Randy Dalton left and went to his home. Later Randy Dalton talked to the officers investigating the case, initially lied about the matter but later told the whole story. He pled guilty to second degree murder with a plea-bargaining agreement that his punishment

should not exceed twenty years. Under that arrangement, he testified as a witness for the State.

Earl Junior Manuel's body was recovered from the river about 800 yards below the bridge. It was determined that Manuel had .33 percent alcoholic content of the blood at the time of his death.

Dr. Page Hudson, a specialist in pathology, testified that he examined the body of Earl Junior Manuel and found a cluster of wounds on the right chest, all of which were superficial. On the left chest, however, there were many deep wounds, some penetrating into the lungs, the liver and the heart. The cause of death was hemorrhage or blood loss secondary to multiple stab wounds in the chest or heart.

Other evidence relative to decision of the case will be narrated in the opinion.

Defendant offered no evidence.

Defendant was convicted of murder in the first degree and sentenced to death. Errors assigned upon appeal to this Court will be discussed in the opinion.

*Rufus L. Edmisten, Attorney General, by Henry H. Burgwyn, Associate Attorney, for the State of North Carolina.*

*John E. Gehring and Ronald M. Price, attorneys for defendant appellant.*

HUSKINS, Justice.

[1]   Defendant contends that the district attorney's argument to the jury was improper and that the court erred in permitting the prosecutor to comment on defendant's failure to testify. The challenged argument is apparently located on pages 79, 80 and 92 of the record.

We note at the outset that defense counsel did not object to the challenged remarks at the time nor was the attention of the court called to them.

It has long been the law that:

"[E]xception to improper remarks of counsel during the argument must be taken before verdict. [Citations omitted.] The rationale for this rule, which has been frequently

quoted, . . . is thus stated in *Knight v. Houghtalling*, 85 N.C. 17: 'A party cannot be allowed . . . to speculate upon his chances for a verdict, and then complain because counsel were not arrested in their comments upon the case. Such exceptions, like those to the admission of incompetent evidence, must be made in apt time, or else be lost.'

We have modified this general rule in recent years so that it does not apply to death cases, when the argument of counsel is so prejudicial to the defendant that in this Court's opinion, it is doubted that the prejudicial effect of such argument could have been removed from the jurors' minds by any instruction the trial judge might have given."

*State v. Smith*, 240 N.C. 631, 83 S.E. 2d 656 (1954); *accord*, *State v. White*, 286 N.C. 395, 211 S.E. 2d 445 (1975); *State v. Little*, 228 N.C. 417, 45 S.E. 2d 542 (1947).

We further note that defendant, having offered no evidence, had the closing argument to the jury. This afforded counsel an opportunity to answer effectively any and all remarks of the prosecuting attorney. The argument of defense counsel is not contained in the record on appeal, as it should be when the district attorney's argument is challenged, *State v. Miller*, 288 N.C. 582, 220 S.E. 2d 326 (1975), but it is reasonable to assume that counsel took full advantage of that opportunity. *See State v. Smith and Foster*, 291 N.C. 505, 231 S.E. 2d 663 (1977); *State v. Smith*, 290 N.C. 148, 226 S.E. 2d 10 (1976).

Notwithstanding defendant's failure to object or otherwise bring to the court's attention the alleged improper argument now complained of, we have examined the challenged remarks of the prosecutor appearing at pages 79, 80 and 92 of the record and find no gross impropriety which required the court, even in the absence of objection, to correct *ex mero motu*.

The argument appearing on page 92 is entirely proper and so innocuous it merits no comment. The argument appearing on pages 79-80 reads as follows:

"Let me at this point say again, as I will later, that by the defendant's plea of 'not guilty' he is presumed to be innocent and the burden is on the State to satisfy you beyond a reasonable doubt of his guilt and the State assumed that burden in this case and the defendant's plea of 'not

guilty' denies every single thing that the State says in this case. Denies every particle of evidence that the State has offered but let me point out the difference between a denial and a contradiction.

There is not a single witness brought here by the defendant to contradict a single piece of evidence that the State has offered in this case. Now I may come back to that. Now what is missing here, well if Benjamin Hopper was not driving that truck, if he was not the man who was managing the motions and movements of that crowd and that after if he did not have anythng to do with it where was he? Where was he? Where had he been when he showed up there at his brother-in-law? Had he been killing hogs somewhere? Somebody knows where he was but no witness came here to tell you that Benjamin Hopper was not driving that Dodge truck back and forth between the sand-hole and Wes Ray's place and over across the Lindsey Bridge. It is simply another indication that Randy Dalton was telling the truth and there is not a witness that contradicts anything that Randy Dalton had to say."

Had the quoted argument been brought to the court's attention by timely objection that it violated G.S. 8-54, the trial judge could have given immediately a mild curative instruction to remove all possibility that the jury might have been prejudiced by the argument. This was not done. The impropriety, if such it be, was not gross and the court was not required to censure the argument and give curative instructions *ex mero motu*. The law on this point has been fully discussed in recent cases, including *State v. Smith,* 290 N.C. 148, 226 S.E. 2d 10 (1976) ; *State v. Peplinski,* 290 N.C. 236, 225 S.E. 2d 568 (1976) ; *State v. Britt,* 288 N.C. 699, 220 S.E. 2d 283 (1975). Moreover, the record discloses that the court's charge to the jury contained the following admonition:

"The defendant in this case has not testified. Any defendant may or may not testify in his own behalf and his failure to testify shall not create any presumption against him. . . . Now, members of the jury, in this case the defendant has not offered evidence as I have just stated and that shall not be used against him, therefore you must be careful not to let his silence influence your decision."

This instruction was sufficient to remove any prejudice that might have resulted from the challenged remarks of the prosecuting attorney. *See State v. Monk,* 286 N.C. 509, 212 S.E. 2d 125 (1975) ; *State v. Lindsay,* 278 N.C. 293, 179 S.E. 2d 364 (1971). The first assignment discussed in defendant's brief is overruled.

The second assignment of error discussed in defendant's brief is based on Exceptions 24A and 25A appearing, respectively, on pages 104 and 117 of the record. Defendant contends the trial judge in his charge to the jury expressed an opinion as to the weight and credibility of the evidence in violation of G.S. 1-180.

[2] Exception No. 24A relates to a portion of the charge in which the judge is recapitulating the testimony of the witnesses. In connection with the testimony of Randy Dalton, the court said:

"Randy Dalton is named as a co-defendant and is charged with first degree murder and he testified or it was brought out in the trial that prior to going on the stand that he entered into a plea negotiation through his attorney, Mr. Vernon Cardwell, with the District Attorney. The Supreme Court of the United States has said that plea bargaining may be entered into and is proper and he said the plea bargaining was that he was to plead guilty to second degree murder and the Solicitor or District Attorney would recommend that he receive a punishment within the range of voluntary manslaughter which carries punishment up to twenty years and he said that he understood that."

Defendant argues the quoted language, although a true statement, refers to a matter that should not have been brought before the jury and permits the jury to conclude that the trial judge is endorsing the testimony of the witness. This contention has no merit.

The witness Randy Dalton had testified on both direct and cross-examination that he had entered into a plea-bargaining arrangement and gave the details. G.S. 15A-1054 and 15A-1055 sanction plea arrangements and provide that the bargain reached may be brought out at the trial by any party. Here, the court was simply summarizing such testimony of the witness Randy Dalton before applying the law to the different factual

aspects of the case. Moreover, no prejudice to defendant oc-curred in any event. Insofar as the plea arrangement is concerned, the challenged language of the judge merely accentuated defendant's argument that Randy Dalton's credibility was suspect in that he was testifying to protect his own interest.

**[3]** Exception No. 25A challenges the sentence in parentheses appearing in the following portion of the judge's charge:

> "I charge for you to find the defendant guilty of murder in the first degree by the killing of a human being by a person committing or attempting to commit a robbery, the State must prove beyond a reasonable doubt first, that the defendant stabbed or cut the deceased Earl Junior Manuel with a knife while he was engaged—While he, the defendant, was engaged either by himself or in concert with Randy Dalton in committing or attempting to commit the felony of robbery. Robbery, as I have heretofore stated, common law robbery is the taking and carrying away of the personal property of another from the person's presence and without his consent by endangering or threatening that person's life. (In this case by threatening him with a knife, the taker, that is the defendants Ben Hopper and Randy Dalton knowing that they were not entitled to take the property and intending to deprive the owner of its use permanently.)"

Defendant's only argument with respect to this exception is that "the court in attempting to explain common law robbery stated affirmatively, where it should have stated hypothetically the matter." This contention is obviously without merit. G.S. 1-180 "requires the court, in both criminal and civil actions, to declare and explain the law arising on the evidence in the particular case and not upon a set of hypothetical facts." *State v. Street,* 241 N.C. 689, 86 S.E. 2d 277 (1955) ; *accord, State v. Campbell,* 251 N.C. 317, 111 S.E. 2d 198 (1959). This assignment is overruled.

**[4]** Defendant next contends the trial court erred by unreasonably restricting his right to examine prospective jurors and cross-examine witnesses. During selection of the jury de-

State v. Hopper

fen'se counsel posed the following questions to prospective jurors Barker and Shelton respectively:

1. "Let me ask you what is your opinion of our court system in North Carolina today, do you think that justice is done?"

OBJECTION SUSTAINED.
EXCEPTION NO. 3

2. "Mr. Shelton, what comes to your mind when someone is indicted for a crime, do you form any opinion?"

OBJECTION SUSTAINED.
EXCEPTION NO. 4

Notwithstanding that the State's objection to the second question was sustained, the following answer appears in the record:

"I would make up my mind according to the evidence that I heard and vote according to my conscience. If the State did not prove their case I don't know if I would vote not guilty. I don't know how I would vote the case."

The record further discloses that the defendant excused both jurors to whom the questions had been addressed.

We find no merit in these exceptions. The first question is clearly improper and the second was answered. Since defendant excused both prospective jurors and only exhausted eleven of his fourteen peremptory challenges, it is not perceived how he has been prejudiced.

With respect to his contention that he was not allowed to fully examine witnesses, defendant's only argument in his brief is that "trial counsel should have been allowed to delve more deeply into the prior lies of Randy Dalton, upon whose testimony [the State] had built its case."

During cross-examination of State's witness Randy Dalton, the witness stated: "I had my first meeting with the law enforcement officers four days after the stabbing. At one of the meetings I lied to the officers." Objection was then sustained to the next question: "So you lied to them?" The witness on further cross-examination stated that he was pleading guilty to second degree murder. Counsel then asked: "Are you guilty of second degree murder?" The State's objection thereto was sus-

tained. This exchange apparently forms the basis for defendant's contention that he was not permitted to fully examine the witnesses. It suffices to say that neither prejudice nor error is shown. The assignment of error grounded on these matters is overruled.

[5]   William A. Anderson, Sheriff of Richmond County, Georgia, testified that he received a message from the Sheriff of Rockingham County, North Carolina, on 10 March 1976 informing him that defendant Benjamin Franklin Hopper was wanted for the murder of Earl Junior Manuel and that Hopper was staying in Room 8 at a motel on U.S. 1 in Augusta, Georgia. After giving some details respecting the motor vehicle Hopper was driving, the message closed with this statement: "[H]e is armed with a .38 caliber pistol and is extremely dangerous." Upon objection by defendant, the court said: "Sustained. The jury is not to consider that portion of the letter about him being dangerous." (Exception No. 14) Defendant contends that the entire message was hearsay and irrelevant and that the closing statement in the letter was highly prejudicial to him.

The record shows that no objection was lodged until the entire message from the Rockingham County Sheriff had been read to the jury. " . . . [I]f it be conceded that the testimony offered is incompetent, objection thereto should have been interposed to the question at the time it was asked as well as to the answer when given. An objection to testimony not taken in apt time is waived." *State v. Hunt*, 223 N.C. 173, 25 S.E. 2d 598 (1943) ; *accord, State v. Merrick,* 172 N.C. 870, 90 S.E. 257 (1916).

Even if admission of the message be error, in our view the limiting instruction given by the court was sufficient to erase any possible prejudice. The law presumes that the jury follows the judge's instructions. *State v. Long,* 280 N.C. 633, 187 S.E. 2d 47 (1972). If defendant desired a different, more limiting instruction, he should have requested it at that time.

[6]   Included in this assignment is defendant's contention that the court erred "in allowing repeated evidence of former statements of Randy Dalton into evidence which may have given the jury the impression the judge gave weight to Randy Dalton's testimony. . . . The court allowed the original statement of Dalton into evidence as well as three supplemental statements." The record discloses that at the time each of the chal-

lenged pretrial statements by Randy Dalton was admitted into evidence the court instructed the jury: "This is allowed only for the purpose of corroborating Randy Dalton, this and any statement that he made to this officer, is allowed only for the purpose of corroborating Randy Dalton, if it does corroborate him and for no other purpose," or similar wording. Prior consistent statements of the witness are competent for corroborative purposes. *State v. Warren,* 289 N.C. 551, 223 S.E. 2d 317 (1976) ; *State v. Miller,* 288 N.C. 582, 220 S.E. 2d 326 (1975); *State v. Bryant,* 282 N.C. 92, 191 S.E. 2d 745 (1972) ; *State v. Rose,* 270 N.C. 406, 154 S.E. 2d 492 (1967). *See* 1 Stansbury's North Carolina Evidence (Brandis rev. 1973) § 51. And an examination of the record reveals that the statements do in fact corroborate Randy Dalton's testimony given at the trial. Moreover, in the body of the judge's charge to the jury he again restricted the admissibility of these statements to corroborative purposes only. There is no merit in the assignment of error challenging their admission.

Denial of defendant's motion for nonsuit on the capital charge at the close of all the evidence constitutes his next assignment of error. He contends there was no evidence to show that "any money or other property" was taken from the deceased and that the felony murder rule therefore does not apply.

[7] We note that the bill of indictment is drawn under G.S. 15-144 and the State, as it had a right to do, proceeded on both the theory of felony murder and murder committed after premeditation and deliberation. *State v. Haynes,* 276 N.C. 150, 171 S.E. 2d 435 (1970). *See State v. Duncan,* 282 N.C. 412, 193 S.E. 2d 65 (1972). The jury found defendant guilty of first degree murder and it is not clear upon which theory the jury reached its verdict. It makes no difference here. There is evidence of premeditation and deliberation as well as evidence of murder committed in the perpetration or attempt to perpetrate a robbery in violation of G.S. 14-17. Completion of the robbery or other felony is not required to sustain a conviction under the felony murder rule. *See State v. Carey,* 285 N.C. 509, 206 S.E. 2d 222 (1974) ; *State v. Fox,* 277 N.C. 1, 175 S.E. 2d 561 (1970). There was evidence tending to show that robbery was the motive for the killing. Thus the judge was well within the law when he submitted first degree murder as a permissible

State v. Hopper

verdict, and the jury was well within the evidence when it found defendant guilty. This assignment is overruled.

The next assignment of error discussed in defendant's brief is addressed to denial of his motion for a change of venue or, in the alternative, for a special venire from another county. G.S. 1-84; G.S. 9-12.

**[8]** Motions for change of venue or special venire are addressed to the sound discretion of the trial judge and, absent abuse of discretion, his rulings thereon will not be disturbed on appeal. *State v. Thompson,* 287 N.C. 303, 214 S.E. 2d 742 (1975); *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123 (1971). Defendant argues that the public might have been inflamed by this murder but cites nothing in support of that assertion. No abuse of discretion having been shown, this assignment is without merit and is overruled.

**[9]** Defendant's final assignment of error challenges the validity of the death sentence imposed. This assignment is well taken and must be sustained.

On 2 July 1976 the Supreme Court of the United States in *Woodson v. North Carolina,* 428 U.S. 280, 49 L.Ed. 2d 944, 96 S.Ct. 2978, invalidated the death penalty provisions of G.S. 14-17 (Cum. Supp. 1975), the statute under which defendant was indicted, convicted and sentenced to death. A sentence of life imprisonment is therefore substituted in this case in lieu of the death penalty by authority of the provisions of section 7, chapter 1201 of the 1973 Session Laws (1974 Session).

Our examination of the entire record discloses no error affecting the validity of the verdict returned by the jury. The trial and verdict must therefore be upheld. To the end that a sentence of life imprisonment may be substituted in lieu of the death sentence heretofore imposed, the case is remanded to the Superior Court of Rockingham County with directions (1) that the presiding judge, without requiring the presence of defendant, enter judgment imposing life imprisonment for the first degree murder of which defendant has been convicted; and (2) that in accordance with said judgment the clerk of superior court issue commitment in substitution for the commitment heretofore issued. It is further ordered that the clerk furnish

to the defendant and his counsel a copy of the judgment and commitment as revised in accordance with this opinion.

No error in the verdict.

Death sentence vacated.