STATE OF NORTH CAROLINA v. JOHN C. FERDINANDO

No. 75

(Filed 4 December 1979)

1. **Criminal Law § 91— speedy trial under Interstate Agreement on Detainers—request for trial before detainer filed**

   Defendant was not denied his right to a speedy trial under the Interstate Agreement on Detainers, G.S. 15A-761, Art. III(a), because he was not brought to trial within 180 days of his first request for a speedy trial where defendant first requested a speedy trial while he was in custody in New York awaiting trial in that state but before a detainer had been filed against him, and the period from the date a detainer was filed against defendant after his conviction in New York and his trial was less than 180 days.

2. **Criminal Law § 89.3— corroboration—prior consistent statements**

   Prior consistent statements of a witness to police officers were properly admitted for the purpose of corroborating the witness's trial testimony.

3. **Homicide § 21.5— premeditation and deliberation—sufficiency of evidence**

   There was sufficient evidence of premeditation and deliberation to support defendant's conviction of first degree murder where the State's evidence tended to show that defendant choked the deceased, pushed her out of a car, and ran over her several times with the car.

4. **Criminal Law § 86.5— cross-examination of defendant—misconduct after crime in question**

   A defendant who took the stand could be cross-examined about specific acts of misconduct which occurred prior to the trial but subsequent to the commission of the crime in question.

5. **Homicide § 30— first degree murder trial—choking and running over victim—failure to instruct on second degree murder and manslaughter**

   In this prosecution for first degree murder, the trial court did not err in failing to instruct the jury that defendant could be guilty of no more than second degree murder or manslaughter if he first choked the victim without malice or without premeditation or deliberation or in the heat of passion and then, believing the victim to be dead, ran over her body, where defendant's evidence tended to show that he was not present when the victim was killed, the State's evidence tended to show that defendant told a witness that he did not know whether the victim was alive or dead when he stopped choking her and proceeded to run over her, and there was thus no evidence tending to show that defendant believed the victim to be already dead when he allegedly ran over her.

APPEAL by defendant from *Small, J.*, 5 February 1979 Session of NEW HANOVER Superior Court.

Defendant was charged in an indictment proper in form with the first degree murder of Barbara Jean Davis Grossnickle. Defendant entered a plea of not guilty.

The State's evidence at trial tended to show the following:

On the evening of 3 March 1978, the deceased, Barbara Jean Davis Grossnickle, her brother, Jimmy Davis, and Patricia Baker were at a tavern in Wilmington, North Carolina. Defendant approached the group and talked with them until the bar closed at 1:30 a.m. Ms. Grossnickle left with defendant in his automobile en route to Ms. Baker's trailer. They did not get out when they arrived at the trailer, but instead drove off together.

On the following day, Ms. Grossnickle's partially clothed body was discovered near the sixth green of Echo Farms Country Club. There was expert testimony, based upon an autopsy, that the deceased had been run over by a car several times and that she was alive at the time she was run over.

At about 8:00 a.m. on 4 March 1978, Mr. Glenn Sneedon, proprietor of Sneedon's Trading Post, observed defendant just outside the store washing the right front portion of his automobile. When defendant entered the store, Mr. Sneedon noticed reddish-brown stains on defendant's clothing and inquired about them. Defendant made no reply but left the store and came back in about ten minutes wearing different clothes. Defendant then told Mr. Sneedon he had hit a girl, but that he did not remember what had happened. Defendant's soiled clothes were later found in trash barrels at Mr. Sneedon's store. The stains proved to be bloodstains which matched the blood type of deceased.

On 6 March 1978, defendant called a friend, Ms. Betty Gerow, and told her he had "messed up this time." He stated that he had driven with a girl to a golf course where he had fallen asleep. When he woke up, his keys, money, gun, and knife were gone. Defendant told Ms. Gerow that the girl started to fight with him and he began to choke her. According to defendant's statement to Ms. Gerow, he then panicked, pushed the girl out of the car, and ran over her with the car. He stated that he did not know whether she was alive or dead when he ran over her.

Defendant's automobile was found abandoned in Charlotte. Human hairs on the underside of the car matched characteristics of deceased's hair.

Defendant testified at trial that he did not harm Ms. Grossnickle. He stated that he left her with her brother at the golf course and that when he returned later, she was dead.

The jury returned a verdict of guilty of first degree murder. Upon the sentencing phase, the jury found as a mitigating circumstance that the crime was committed while the defendant was under the influence of mental or emotional disturbance. The jury recommended life imprisonment and judgment was entered accordingly. Defendant appealed.

*Rufus L. Edmisten, Attorney General, by Joan H. Byers, Assistant Attorney General, for the State.*

*Elton G. Tucker for defendant appellant.*

BRANCH, Chief Justice.

[1] Defendant first assigns as error the denial of his motion to dismiss the indictment for failure of the State to grant a speedy trial. Defendant does not allege a violation of his constitutional right to a speedy trial but instead contends that under the Interstate Agreement on Detainers, G.S. 15A-761, Article III(a), he was entitled to be brought to trial within 180 days of his first request for a speedy trial.

The record discloses that defendant first requested a speedy trial on 15 March 1978, eleven days following the death of Barbara Grossnickle. He continuously made similar requests during the months following this initial request. At the time of his first request, defendant was in custody in the State of New York on three charges of attempted murder. On 20 March 1978, defendant was indicted by a grand jury in New Hanover County, and on 3 April 1978, the North Carolina Governor's Office mailed a Requisition for the defendant to the New York Governor's Office. New York authorities responded that the defendant would be tried there prior to being released to North Carolina. On 8 September 1978, North Carolina officials were notified that defendant had been convicted and sentenced to a term of imprisonment in New York. At that time, the New Hanover County District Attorney's

Office requested custody of defendant pursuant to the Interstate Agreement on Detainers. Defendant was returned to North Carolina. He moved to dismiss the indictment for failure of the State to grant a speedy trial. That motion was denied in an order dated 1 December 1978. Defendant was brought to trial on 5 February 1979.

The pertinent language of the Interstate Agreement on Detainers reads as follows:

> (a) Whenever a person *has entered upon a term of imprisonment* in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint *on the basis of which a detainer has been lodged against the prisoner,* he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint . . . . [Emphasis added.]

The Agreement permits officials in one state to lodge a detainer and obtain custody of a person in another state only when that person "has entered upon a term of imprisonment in a penal or correctional institution of a party state." Further, the right of a prisoner to request a final disposition under the statute arises only after "a detainer has been lodged against the prisoner." In the instant case, New York officials notified New Hanover officials on 8 September 1978 that defendant had been convicted and sentenced to a term of imprisonment in New York. At that time, officials here were informed that they could proceed under the Agreement to lodge a detainer. On 14 September 1978, North Carolina authorities mailed their request for custody of defendant, and on 21 September 1978, New York authorities acknowledged receipt of that request. Defendant's requests for a speedy trial made prior to the time the detainer was lodged were ineffectual. Even assuming that the detainer was "lodged" in this case upon the mailing of the request for custody on 14 September 1978, and that defendant made a request on that same day, the period from that date until defendant was brought to trial on 5

February 1979 was less than 180 days. We, therefore, hold that defendant's rights under the Interstate Agreement on Detainers were not violated.

[2] Defendant next assigns as error the admission of prior consistent statements of a witness for purposes of corroboration. The State introduced, for purposes of corroborating Ms. Gerow's testimony, a statement which she had made to police officers concerning her telephone conversation with defendant on 6 March 1978. Although defendant did not request such an instruction, the trial judge correctly charged that this evidence was admitted solely for the purpose of corroborating the testimony of the witness, Ms. Gerow.

It is well settled in this state that prior consistent statements of a witness are admissible for purposes of corroboration. 1 Stansbury's N.C. Evidence (Brandis Rev. 1973), secs. 50-52 and cases cited therein. This assignment is overruled.

[3] Defendant assigns as error the trial court's denial of his motions for judgment as of nonsuit and for a directed verdict on the charge of first degree murder. In support of this assignment of error, defendant argues that there was insufficient substantial evidence to support a jury finding of premeditation and deliberation.

Murder in the first degree is an unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393 (1971); *State v. Brown,* 249 N.C. 271, 106 S.E. 2d 232 (1958). An unlawful killing is deliberate and premeditated if done pursuant to a fixed design to kill, notwithstanding that defendant was angry or in an emotional state at the time. *State v. Faust,* 254 N.C. 101, 118 S.E. 2d 769, *cert. denied,* 368 U.S. 851, 7 L.Ed. 2d 49, 82 S.Ct. 85 (1961). Generally, it is not possible to show premeditation and deliberation by direct evidence, but such elements must be established by proof of circumstances from which they may be inferred. *State v. Buchanan,* 287 N.C. 408, 215 S.E. 2d 80 (1975). In the instant case, the State presented evidence tending to show that defendant choked the deceased, pushed her out of the car, and ran over her several times. The requisite premeditation and deliberation could be inferred from the brutal nature of the assault, the use of grossly excessive force, or the "dealing of lethal blows after the

deceased had been felled." *State v. Buchanan, supra; State v. Duboise, supra.* We hold that there was plenary evidence to support a jury finding that defendant killed Ms. Grossnickle with premeditation and deliberation.

[4] Defendant next contends that the trial court erred in permitting cross-examination of defendant regarding specific acts of misconduct. Defendant was questioned on cross-examination about specific acts of misconduct which occurred in New York prior to his trial in this case, but subsequent to the commission of the crime involved here. Defendant concedes that by taking the stand, he was subject to cross-examination regarding his prior acts of misconduct. Defendant argues, without citation of authority, that the acts must have occurred *prior* to the commission of the crime for which he is on trial, and that it was, therefore, impermissible to inquire about subsequent acts.

We have consistently held that a defendant who takes the stand to testify may be asked about prior acts of misconduct for purposes of impeachment and that "*[a]ny* act of the witness which tends to impeach his character may be inquired about or proven by cross-examination." *State v. Simms*, 213 N.C. 590, 197 S.E. 176 (1938) (emphasis added). Where the veracity of a witness is in question, the relevant inquiry concerns his credibility at the time of testifying, and *any acts prior to trial* which tend to shed light on his credibility as a witness are properly admissible for purposes of impeachment. Stansbury, *supra*, sec. 116. We find no merit in defendant's fourth assignment of error.

[5] Finally, defendant contends that the trial court erred in failing to instruct the jury that, if the defendant first choked the victim without malice or without premeditation or deliberation or in the heat of passion and then, believing the victim to be dead, ran over the body, the defendant could be guilty of no more than manslaughter or second degree murder.

It is the duty of the trial court in instructing the jury to "declare and explain the law arising on the evidence." G.S. 15A-1232; *State v. Hopper*, 292 N.C. 580, 234 S.E. 2d 580 (1977). It is error for the court to instruct upon a set of hypothetical facts not presented by the evidence. *State v. Hopper, supra.*

In the present case, defendant's evidence tended to show that he was not present when the deceased was killed. Defendant

maintained that he neither choked nor ran over the deceased. The State's evidence consisted in large part of the testimony of Ms. Gerow concerning a telephone conversation with defendant on 6 March 1978. According to her statement, defendant told her that he *did not know* whether Ms. Grossnickle was alive or dead when he stopped choking her and proceeded to run over her. There is no evidence in the case tending to show that defendant believed Ms. Grossnickle to be already dead when he allegedly ran over her. Thus, we hold that the instruction tendered by defendant was not warranted since there was no evidence to support it.

The trial court in this case correctly and adequately charged the jury on the law as it applied to the facts of this case.

Defendant received a fair trial free from prejudicial error.

No error.