STATE OF NORTH CAROLINA v. RANDY ANTHONY PERRY

No. 8010SC788

(Filed 3 February 1981)

**Criminal Law § 75.13— incriminating statements made to bail bondsman — no necessity for Miranda warnings — voluntariness**

When taking a defendant who was a bail jumper into custody, a bail bondsman was not acting as a law officer or as an agent for the State, and the bondsman had no obligation to give defendant the *Miranda* warnings in order to render admissible incriminating statements made by defendant to the bondsman. Furthermore, defendant's incriminating statements to the bondsman were made knowingly and voluntarily where defendant testified that he was threatened with a shotgun and was struck on the head with the shotgun at the time he was taken into custody by the bondsman, the incriminating statements by defendant occurred a substantial time later during a drive to the county of trial and were made in an atmosphere of casual conversation, defendant testified that he had "shot" some drugs but that he was not under the infuence of the drugs when he made the statements, and the trial judge made findings and conclusions to the effect that defendant understood all that was taking place prior to his arrest and during the trip back to the county of trial and that the bail bondsman did not use any tactics or pressure to secure a statement from defendant.

APPEAL by defendant from *Brannon, Judge.* Judgment entered 17 March 1980 in Superior Court, WAKE County. Heard in the Court of Appeals 8 January 1981.

Defendant was convicted of the armed robbery of a Fast Fare store in violation of G. S. 14-87 and sentenced to not less than seven nor more than fifty years' imprisonment. Defendant has appealed, bringing forth four assignments of error. Pertinent facts will be stated in the opinion.

*Attorney General Edmisten, by Special Deputy Attorney General Thomas F. Moffitt, for the State.*

*Donald H. Solomon, for defendant appellant.*

HILL, Judge.

The defendant contends that the testimony of C. L. Collins, a bail bondsman, concerning statements made by the defendant should have been suppressed. Defendant argues that his statements

State v. Perry

were made after he was taken into custody by Collins and that *Miranda* warnings were not given. Defendant further argues that because his extrajudicial statements were not made voluntarily and knowingly, but were made during an improper interrogation, they should have been suppressed. We do not agree with defendant's contentions.

On *voir dire*, the trial judge found that, while a warrant had been issued for the defendant in connection with the case *sub judice*, the defendant had not been arrested on the warrant or indicted for the offense. Defendant had in fact fled when an arrest for the offense involved in the case *sub judice* was attempted.

The trial judge further found the defendant failed to appear on a bond which Collins had posted on defendant's behalf in another case. Collins located the defendant in a migrant workers' camp near Benson. With another person, Collins proceeded to the migrant workers' camp and arrested the defendant. Neither Collins nor the other person are law enforcement officers. Both Collins and the other person carried unloaded shotguns, which they intended to use as a bluff, if needed. When the defendant started to run, Collins grappled with the defendant, hitting him on top of the head with the barrel of the shotgun. Collins and his associate then handcuffed the defendant and placed him in Collins' car.

During the early part of the drive back to Wake County, there was little, if any, conversation between the parties. Collins stopped the car for gas and switched the handcuffs on the defendant from the back of his person to the front. Thereafter, in order to stay awake, Collins engaged in "street conversation" with the defendant. During this conversation, Collins posed a general question to the defendant as to why defendant left without paying the premium on the bond. Defendant replied generally, acknowledging the robbery for which he was then on trial. Defendant further replied that he was trying to get the bondsman's money and that he had to leave his daddy's car while fleeing from the police after the robbery.

The trial judge further found that although the defendant had incurred a cut on his head requiring five stitches to close, defendant remembered perfectly what happened during the time of the conversation and was in no way mentally or physically unaware of the circumstances or what he was saying or doing.

G. S. 85C-7 provides:

For the purpose of surrendering the defendant, the surety may arrest him before the forfeiture of the undertaking, or by his written authority endorsed on a certified copy of the undertaking, may request any judicial officer to order arrest of the defendant.

We do not interpret the arrest provisions of this statute as creating a law enforcement officer in the person of the bail bondsman. Neither do we conclude that the bondsman's right to request that a judicial officer order the arrest of a defendant creates a "law enforcement officer" in the person of the bail bondsman. The bondsman's right of arrest is simply a codification of the common law rule that has been recognized in North Carolina for many years. *See State v. Lingerfelt*, 109 N.C. 775, 14 S.E. 75 (1891).

When taking a bail jumper into custody, a bail bondsman is not acting as a law enforcement officer or as an agent of the state in any regard. His right of arrest is private in nature, arising out of the bail contract between the principal and his surety. Thus, there was no obligation on the part of the bail bondsman to give *Miranda* warnings.

[I]t is generally accepted that a statement made to a private individual is not inadmissible by virtue of the private individual's failure to warn the accused in terms of the *Miranda* requirements.

In re Simmons, 24 N.C. App. 28, 32, 210 S.E.2d 84 (1974), *citing* McCormick's Handbook on the Law of Evidence, § 162 (2d Ed. 1972).

Defendant further contends that when taken into custody by the bail bondsman, any words or actions on the part of the bail bondsman that were reasonably likely to elicit an incriminating response from the defendant are impermissible and render a confession elicited by those actions inadmissible. *See Rhode Island v. Innis*, ____ U.S. ____, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). *Innis* deals with a defendant *arrested by a police officer*, not with a custodial apprehension by a private citizen.

We are not impressed by defendant's arguments that the defendant's statements were not voluntarily made. Defendant testi-

State v. Perry

fied that at the time of the arrest Collins pointed the shotgun at him and said, "Don't run, Randy." and "Nigger, all that money you made me lose, I ought to kill you." Defendant further testifed that he was struck on the head with the shotgun and the gun was later discharged outside the place of arrest. The admissions by the defendant occurred, however, a substantial time later during the drive back to Wake County and were made in an atmosphere of casual conversation. Defendant testified at the *voir dire* that he had "shot" some drugs, but further testified that he was not under the influence of the drugs when he made the admissions.

The trial judge made findings of fact and conclusions of law to the effect that the defendant understood all that was taking place prior to his arrest and during the trip in the car back to Wake County. The judge found that the bail bondsman did not use any tactics or pressure to secure a statement from the defendant. The record corroborates the findings of fact by the judge, and we are bound thereby. *See State v. Johnson*, 272 N.C. 239, 158 S.E.2d 95 (1967).

Defendant raises two further questions. One deals with photographic identification of the defendant; the other with the introduction of certain evidence. The questions raised are not novel and have no merit. Furthermore, the introduction of such evidence would be harmless in the light of the total evidence offered against the defendant.

In defendant's trial we find

No error.

Judges ARNOLD and WELLS concur.