STATE OF NORTH CAROLINA v. CHARLES TIMOTHY MATHIS AND BARAK
ELLIOT WILLIAMSON, Defendants

No. COA96-1312

(Filed 1 July 1997)

1. **Arrest and Bail § 199 (NCI4th)— arrest by bail bondsmen—bondsmen charged with breaking or entering, assault on a female, injury to real property—evidence sufficient**

There was sufficient evidence to warrant submission to the jury of charges of misdemeanor breaking and entering, misdemeanor assault on a female, and injury to real property where defendants were licensed bail bondsmen seeking to find and arrest William Tankersly; they had information that Tankersly was in his mother's residence, where he lived; Tankersly's mother, Mrs. Nelson, answered the back door, stepped outside, and closed the storm door behind her; she told defendants that her son was not at home and adamantly refused to allow defendant Mathis to enter; Mathis forced open the door while Mrs. Nelson stood in front of it and blocked the entrance; Mathis used the door to pin her against the exterior wall of the house while he and defendant Williamson entered the house; Mrs. Nelson testified that the screen door was damaged as Mathis pushed against

one side while she pushed against the other; defendants began searching the house, but could not gain access to a locked bedroom because Mrs. Nelson claimed it was the baby's room; Mrs. Nelson called the police, who asked defendants to leave and let them handle the situation; and Tankersly was arrested later that evening.

**Am Jur 2d, Bail and Recognizance §§ 119 et seq.**

**2. Arrest and Bail § 199 (NCI4th)— arrest by bail bondsmen—prosecution of bail bondsmen for assault and breaking or entering—instructions—authority of bail bondsmen**

The trial court erred in a prosecution for misdemeanor breaking and entering, misdemeanor assault on a female, and injury to real property by refusing to instruct the jury on the statutory and common law authority of bail bondsmen to arrest a principal who has failed to appear for court. The common law, recognized in North Carolina for many years and codified by statute, authorizes the surety on a bail bond or a bail bondsman acting as his agent to arrest and surrender the principal if he fails to make a required court appearance; the surety in effect assumes custody of the principal and the surety's custody is viewed constructively as a continuance of the original imprisonment. The bail bondsman is privileged when making a lawful arrest to use such force against a third person impeding the arrest or attempting to rescue or assist the suspect as he or she would be privileged to use against one who resisted or attempted escape. However, the bail bondsman is only privileged to use the amount of force that is reasonable and necessary under the circumstances to accomplish the arrest and it is the province of a properly charged jury to determine whether the amount of force used by the bail bondsmen in this case was necessary or reasonable under the circumstances.

**Am Jur 2d, Bail and Recognizance §§ 119 et seq.**

Appeal by defendants from judgments entered 7 June 1996 by Judge James C. Davis in Cabarrus County Superior Court. Heard in the Court of Appeals 2 June 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General Ted R. Williams, for the State.*

*Aaron E. Michel for defendant appellants.*

SMITH, Judge.

Defendants appeal criminal convictions of breaking and entering, assault on a female, and injury to real property. Evidence presented at trial tended to show that defendants are licensed bail bondsmen. On 9 December 1995, defendant Mathis received instructions from his employer to find and arrest William Tankersly III because he had "skipped bail."

Defendants drove to the residence of Tankersly's mother where Tankersly lived. Tankersly's sister answered the door. She told defendants that her brother and mother had left about twenty minutes before in a white Mazda. Later that evening, defendants received information that Tankersly had returned. Defendants went to the residence and observed the white Mazda in the driveway. Mrs. Nelson, Tankersly's mother, answered the back door, stepped outside, and closed the storm door behind her. Defendant Mathis testified that he showed Mrs. Nelson his bail bondsman license and a warrant to arrest her son. Mrs. Nelson told Mathis that her son was not at home and adamantly refused to allow him to enter. Mathis insisted that Tankersly was there because the white Mazda was parked in the driveway.

Mathis forced open the storm door while Mrs. Nelson stood in front of it and blocked the entrance. He used the door to pin her against the exterior wall of the house while he and defendant Williamson entered the house. Mrs. Nelson testified that the storm door was damaged as Mathis pushed against one side and Mrs. Nelson pushed against the other.

Once defendants were inside the house, they began searching for Tankersly. Mrs. Nelson immediately called the police. Defendants were unable to gain access to a locked bedroom in the front of the house because Mrs. Nelson claimed it was the baby's room.

When police arrived, they asked defendants to leave the premises and let them handle the situation. Tankersly was taken into police custody later that evening.

Defendants Mathis and Williamson were convicted of misdemeanor breaking and entering and Mathis was also convicted of misdemeanor assault on a female and injury to real property at the 18 January 1996 Criminal Session of the District Court of Cabarraus County. Defendants appealed to Superior Court. On 7 June 1996, both defendants were found guilty by a jury of misdemeanor breaking and

entering and Mathis was found guilty of misdemeanor assault on a female and misdemeanor injury to real property. Defendants appeal.

[1] Defendants first assign error to the trial judge's denial of their motion to dismiss for insufficiency of the evidence. We have carefully examined the entire record and hold there was sufficient evidence to warrant submission of the charges to the jury.

[2] Defendants next argue that they are entitled to a new trial because the trial court refused to instruct the jury on the law regarding the statutory and common law authority of bail bondsmen to arrest a principal who has failed to appear for court. This argument has merit.

Defendants presented a defense of their actions based on a "claim of right" to enter Tankersly's premises for the purpose of arresting him. In support of their defense, defendants requested that the trial judge read selected portions of *Taylor v. Taintor*, 83 U.S. 366, 371-72, 21 L. Ed. 287, 290 (1873) and *Pickelsimer v. Glazener*, 173 N.C. 630, 633-34, 92 S.E. 700, 702 (1917) pronouncing the authority of bondsmen to break and enter the principal's home if necessary to complete an arrest.

"When instructing the jury, the trial court has the duty to, 'declare and explain the law arising on the evidence.' " *State v. Corn*, 307 N.C. 79, 86, 296 S.E.2d 261, 266 (1982) (quoting N.C. Gen. Stat. § 15A-1232; *State v. Ferdinando*, 298 N.C. 737, 260 S.E.2d 423 (1979)). If a requested instruction is a correct statement of the law and supported by the evidence, the trial judge is not required to give the instruction exactly as requested, but must give the instruction in substance. *Id.*

The common law, recognized in North Carolina for many years and codified by statute, authorizes the surety on a bail bond, or a bail bondsman acting as his agent, to arrest and surrender the principal if he fails to make a required court appearance. N.C. Gen. Stat. § 58-71-30 (1994); *State v. Perry*, 50 N.C. App. 540, 542, 274 S.E.2d 261, 262, *disc. review denied and appeal dismissed*, 302 N.C. 632, 280 S.E.2d 446 (1981). When a surety assumes the obligation of bail, he in effect also assumes custody of the principal. The law views the surety's custody constructively as a continuance of the accused's original imprisonment. *Pickelsimer*, 173 at 634, 92 S.E. at 702. The surety guarantees the principal's appearance in court and risks forfeiture of the bail bond if he fails to appear to answer the charge against him. N.C. Gen. Stat. §§ 58-71-1(10) (1994 & Supp.

1996), 58-71-35 (1994); 2 Charles E. Torcia *Wharton's Criminal Procedure* § 298 at 284-86 (13th ed. 1990).

The common law grants broad authority to bail bondsmen to seize and surrender their principals when necessary. It has remained substantially unchanged by statute. *See Perry*, 50 N.C. App. at 542, 247 S.E. 2d at 262.

> Whenever they choose to do so, they may seize him and deliver him up in their discharge, and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another state; may arrest him on the Sabbath; and, *if necessary, may break and enter his house* for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest, by the sheriff, of an escaping prisoner . . . "The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge." The rights of the bail in civil and criminal cases are the same.

*Taintor*, 83 U.S. at 371-72, 21 L. Ed. at 290 (citations omitted); *accord Pickelsimer*, 173 N.C. at 634-35, 92 S.E. at 702 (emphasis added).

The State contends that the trial judge was not required to instruct the jury on the law regarding the right of a bail bondsman to arrest his principal, claiming the law is inapplicable to the facts of this case because it involves a third party. We disagree.

The bondsman's broad authority to arrest, however, is not without limitations. When a bail bondsman takes a bail jumper into custody, he is acting as a private citizen vested with both statutory and common law authority to make a lawful arrest. *Perry*, 50 N.C. App. at 542, 274 S.E.2d at 262; N.C. Gen. Stat. § 58-71-30 (1994). He is privileged to use only the amount of force that is reasonable and necessary under the circumstances to accomplish the arrest. 8 C.J.S. *Bail* § 139 at 164 (1988); 6A C.J.S. *Arrest* § 49(a) at 113-14 (1975); *see also* N.C. Gen. Stat. § 15A-405(a) (1988 & Supp. 1996) (private citizen making arrest has same authority as police officer). There is no justification for "willful, malicious or criminally negligent conduct . . . which injures or endangers any person or property . . . [or] the use of unreasonable or excessive force." G.S. § 15A-405(a) (statutory authority for private citizen to assist law enforcement officers in making arrest); N.C. Gen. Stat. § 15A-401(d)(1) (1988 & Supp. 1996) (use of force by police officer making an arrest); *see also* 6A C.J.S. *Arrest* § 49(a) at 114-15.

Moreover, when a bail bondsman making a lawful arrest believes that a third person is

> intentionally impeding the privileged arrest or recapture of a suspect, or is attempting to rescue or assist the suspect in resisting arrest or escaping therefrom, the arrestor is privileged to use such force against the third person as he or she would be privileged to use against one who resisted or attempted escape.

5 Am. Jur. 2d Arrest § 116 at 750-51 (1995). It is the province of a properly instructed jury to determine whether the amount of force used by the bail bondsmen in this case was necessary or reasonable under the circumstances. *Perry v. Gibson*, 247 N.C. 212, 215, 105 S.E.2d 277 (1958).

The trial court committed reversible error by failing to instruct the jury on the common law and statutory authority of bail bondsmen to break and enter a principal's home to accomplish a lawful arrest. On remand the trial court should also instruct the jury regarding the privilege of reasonable force and the prohibition against excessive force when making a lawful arrest.

Reversed and remanded.

New trial.

Judges Eagles and McGee concur.