# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

   v.

Trevor W. Lyon

## March 16, 1998

## Case No. CR97004681-00

BY JUDGE EVERETT A. MARTIN, JR.

This case is before the court on Lyon's motion to dismiss the indictments brought against him for abduction, burglary, and the use of a firearm in the commission of those felonies. Lyon was the agent of Joseph Boston, a North Carolina bondsman, at the time of the commission of the offenses alleged. Lyon broke through the glass outer door of Allen Hunter's home in what he claims was an attempt to arrest Michael Griffin, and he allegedly held Hunter at gunpoint. Boston was the surety on a bail bond Griffin posted to obtain his release from jail on felony narcotics charges in North Carolina. Griffin failed to appear for trial on those charges. Lyon claims Griffin was fleeing through Hunter's home at the time he entered and that he committed these acts while pursuing Griffin. Thus, Lyon alleges his acts were not unlawful. Hunter denies Griffin resided in his house or was present when Lyon entered. I find that the resolution of the issues will depend on facts to be determined by a jury, and I thus deny the motion to dismiss the indictments.

Code of Virginia § 19.1-149 authorizes the surety on a bail bond to arrest his principal at any time and to surrender him to the appropriate court, sheriff, sergeant, jailer, or clerk of court. This is declaratory of the common law. Federal and state courts frequently cite *Taylor v. Taintor*, 83 U.S. (16 Wall.)

366, 371 (1873), for the common law rules governing the manner in which bail bondsmen may arrest their principals:

> When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up·in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another State; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the re-arrest, by the sheriff, of an escaping prisoner.

The power given to bondsmen is grounded in the notion that the principal is always in the "actual or potential custody of the bail who are in contemplation of law, his jailers." *Levy v. Arnsthall*, 51 Va. (10 Gratt.) 641, 643 (1854). "In general, the surety may do whatever an officer might do with a warrant for the defendant's arrest, even to the extent of making forcible entry into the defendant's home." *Restatement of Security* § 204, comment b (1941). Some courts have found the rights of the surety are subrogated to the rights and means possessed by the state to make his control of his principal effective. See, for example, *Frasher v. Maryland*, 8 Md. App. 439, 260 A.2d 656, 660 (1970), *cert. denied*, 400 U.S. 959 (1970); *Carr v. Sutton*, 70 W. Va. 417, 74 S.E. 239 (1912).

*Semayne's Case*, 5 Coke Rep. 91a, 11 Eng. Rul. Cas. 627, 77 Eng. Rep. 194 (1603), is the origin of our present proscription of "no knock" entries as well as the adage that a man's home is his castle. Sir Edward Coke stated there that a sheriff could not break the outer doors of the defendant's house to serve civil process, but that "In all cases when the King is party, the Sheriff (if the doors be not open) may break the party's house ... to arrest him ... if otherwise he cannot enter. But before he breaks it, he ought to signify the cause of his coming, and to make request to open doors." 5 Coke Rep. at 91b. It was also held there with respect to civil process:

> the house of any one is not a castle or privilege but for himself, and shall not extend to protect any person who flies to his house ... to escape the ordinary process of law ... and therefore in such cases after denial on request made, the Sheriff may break the house.

5 Coke Rep. at 93a.

Our Supreme Court cited *Semayne's Case* in *Johnson v. Commonwealth*, 213 Va. 102, 189 S.E.2d 678 (1972), in which it held that police officers must generally knock and announce their purpose before forcibly entering a dwelling, but that this requirement could be excused in exigent circumstances, including the prevention of escape. *See also Heaton v. Commonwealth*, 215 Va. 137, 207 S.E.2d 829 (1974). In his dissenting opinion in *Steagald v. United States*, 451 U.S. 204, 227 (1984), then Justice Rehnquist referred to *Semayne's Case* as "the leading authority."

Sir Matthew Hale noted that an officer could forcibly enter the house of the person subject to the arrest warrant:

> And so much more may he break open the house of another person to take him, for so the sheriff may do upon a civil process. But then he must at his peril see that the felon be there, for if the felon be not there, he is a trespasser to the stranger whose house it is.

2 Hale, *History of the Pleas of the Crown* 117 (1736).

In *Sheers v. Brooks*, 2 H. Bl. 120, 126 Eng. Rep. 463 (1792), the plaintiff sued the defendants for civil trespass. The defendants were sureties on a bail bond Kempson had given in an action of trespass on the case. Kempson "used, occupied, and resided" in the plaintiff's house. The plaintiff claimed the defendants broke an inner door of her house to apprehend Kempson to surrender him to jail. It appears the outer door of the house was open and Kempson was not present when the defendants entered. The defendants filed a plea of justification to the declaration, and the plaintiff demurred to the plea. Among other contentions, the plaintiff argued that the sureties were not allowed to enter the house of another to take the principal unless the principal was in the house at the time; nor could such an entry be justified merely because it was alleged the principal "used, occupied, and resided" in the house.

The three judges of the Court of Common Pleas overruled the demurrer and sustained the plea. Lord Loughborough described the general powers of the surety and stated, "And I see no difference between a house of which he [the principal] is solely possessed, and a house in which he resides by the consent of the owner." 126 Eng. Rep. at 464. Judge Gould wrote, "the Plaintiff received him into her house, subject to all the legal consequences, to which he would have been liable, if the house had been his."*Id.*

American law has not remained static since 1792. In *Steagald v. United States, supra*, the Supreme Court held that absent exigent circumstances a law enforcement officer must obtain a search warrant to search the home of a third party for the subject of an arrest warrant. The Court noted that "hot pursuit" cases are within the exigent circumstances exception. 451 U.S. at 218, 221. I should note, however, that a surety need not obtain new process. *Taylor v. Taintor, supra*.

I have found nothing to indicate that the common law of England has changed since *Semayne's Case* and *Sheers* were decided. *Sheers* was cited in connection with the execution of civil process as recently as 1976 by Lord Hailsham, the former Lord High Chancellor of Great Britain, in *Halsbury's Laws of England* (4th ed. 1976) and mentioned by the court in *Steagald*, 451 U.S. at 217, n. 11.

The common law gives a surety the powers of a sheriff to apprehend an escaped prisoner. Thus a surety or his agent may enter forcibly into the dwelling of another if his principal resides there or be then present. Like a sheriff, however, he may enter forcibly, absent exigent circumstances, only after knocking on the outer door, stating his authority and purpose, and being refused admission.

Code § 1-10 provides:

> The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly.

The Constitution of Virginia accomplishes many objects, but it does not govern relations among private parties. It is thus difficult to imagine how the common law powers of a bail bondsman, which derive from contract, could be repugnant to it. Even assuming Article I, § 10, applied, that section has been held to adopt the common law. *McClannan v. Chaplain*, 136 Va. 1, 116 S.E. 495 (1923). It might be contended that a bail bondsman is a state actor and that this common law power would violate the due process clause of Article I, § 11, but the Commonwealth claims a surety is not a state actor, so I will not address this issue.

The General Assembly has never enacted a statute modifying the common law on this subject. Two bills, House Bills 151 and 541, were introduced during the 1998 Session to make felonious the entry of a surety or his agent into the dwelling of another without the other's consent. The former bill was

continued to the 1999 Session; the latter was withdrawn. Thus, I must conclude that the common law as stated in *Semayne's Case* and *Sheers v. Brooks* and by Hale remains the law of Virginia.

A case of more recent vintage upholding a surety's right to enter the house of a third party to arrest his principal is *North Carolina v. Mathis*, 126 N.C. App. 688, 486 S.E.2d 475 (1997). The surety there forced open the outer door to the principal's mother's house to arrest him. The principal apparently did not own the house but lived there, and he was absent at the time of the forced entry. The surety was convicted of breaking and entering, assault on the principal's mother, and damage to property. The trial court refused to instruct the jury on the common law and statutory authority of a bail bondsman, and the court of appeals reversed the surety's convictions on this ground.

The court held that a surety was privileged "to use only the amount of force that is reasonable and necessary under the circumstances to accomplish the arrest," and that if a third person was attempting to impede the arrest, the surety could "use such force against the third person as he or she would be privileged to use against one who resisted or attempted escape." 486 S.E.2d at 477-78.

To the same effect is *Livingston v. Browder*, 51 Ala. Civ. App. 366, 285 So. 2d 923 (1973). There the principal was living with his mother when he failed to appear for trial. The surety went to the mother's house and saw the principal inside. The surety knocked on the door, and the mother opened it. The evidence was in conflict about what happened thereafter, but the surety entered the house to arrest the principal. The principal's mother claimed she did not consent to the entry, and she sued the surety for trespass. The trial court instructed the jury that the surety had no right to enter the house without the consent of the mother, and the jury returned a verdict for the mother.

The Alabama Court of Appeals reversed the judgment and remanded the case. The court's ruling rested on a state statute giving the bondsmen the power to arrest his principal "any place," the analogy of the surety's power over his principal to that of a sheriff over an escaping prisoner, and the attribution of Alabama laws governing police arrest procedures to bail bondsmen.

The *Livingston* court did not, however, recognize an unqualified right in the surety to enter the home of a third party to arrest his principal. Rather, the court found that the surety would not be required to obtain consent before entering the third party's dwelling when he saw his principal inside if the surety identified himself properly, apprised the head of the family of his mission and authority, and executed the arrest in a reasonable manner.

I recognize that the majority of modern cases from other states do not permit a surety to enter the house of a third person. For example, in *Minnesota v. Tapia*, 468 N.W.2d 342 (Minn. Ct. App. 1991), the court held a bondsman's authority to arrest his principal did not extend to forcible entry of a third party's residence, even though he had reasonable cause to believe his principal was inside because the bondsman had only the authority of a private citizen to enter the home of a third party, and that did not include the power of forcible entry. The court in *New Mexico v. Lopez*, 105 N.M. Ct. App. 538, 734 P.2d 778 (1986), *cert. denied*, 479 U.S. 1092 (1987), held that, although the bondsman had the statutory authority to arrest his principal, he was not immunized from liability for violations of the state's criminal laws against third parties or their property.

*Washington v. Portnoy*, 43 Wash. App. 455, 718 P.2d 805 (1986), upheld the assault convictions of a bail bondsman who, in search of his principal, entered the home of a third party and assaulted several persons, some of whom had attacked him. The court noted that bail bondsmen have "extraordinary powers under the common law," citing *Taylor* but found no common law authority for their entry into third parties' homes. *Id*. at 811. *See also, Mishler v. Indiana*, 660 N.E.2d 343 (Ind. App. 1996) (holding the bondsman had no right of entry into the home of a third party and affirming his trespass and assault convictions).

A surety is not immune from prosecution for burglary. However, under Virginia's burglary statutes, Code § 18.2-89 *et seq.*, it is difficult to imagine how a surety could be convicted if he broke and entered for the sole purpose of arresting his principal and returning him promptly to jail. The burglary statutes require a breaking and entering (or in some cases only an entering) of a dwelling or other structure of another with the intent to commit some *other* crime. A breaking and entering of the dwelling of another to seek refuge from the elements would be a civil or criminal trespass at common law, but it would be no burglary. I should note that the burglary indictment here does not state the other crime. It states that Lyon broke and entered "with intent to commit statutory burglary therein."

It is true a surety has no right to rob his principal, to batter him (other than the touching reasonable and necessary to arrest him), to detain him longer than may be reasonable and necessary to surrender him to jail, or to detain him to extort property from others, *Perry v. Commonwealth*, No. 0237-95-2 (Va. App. 1996); *McCaleb v. Peerless Ins. Co.*, 250 F. Supp. 512 (D. Neb. 1965). However, he certainly has legal justification to deprive the principal of

his personal liberty to return him to jail. What intent Lyon had at the time he broke and entered is a question for the jury.

There remains the extent of the surety's right to detain a third party while attempting to arrest his principal. It is a sheriff's duty to arrest an escaped prisoner. To do so he may ask others to identify the prisoner and tell where he may be found. If the sheriff has reasonable suspicion the escaped prisoner is among a group of others, he may briefly detain those of the others who may resemble the prisoner until furnished satisfactory proof of their identities. See, for example, *Michigan v. Summers*, 452 U.S. 692 (1982); *Florida v. Bostick*, 501 U.S. 429 (1991). The others may, of course, shorten their detention by identifying the one sought. If another impedes the sheriff in his attempt to arrest the prisoner, the sheriff may, as the court held in *Mathis*, use such force against the other person as he would be privileged to use against the prisoner. By the principle previously stated, the surety has similar authority.

Therefore, the defendant's motion to dismiss is denied.